ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 1 4 2005

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

**LINDSEY BULLARD,**
  **Plaintiff,**

**-vs-**

**MEDIA PLAY, INC.,**
**MRA HOLDING, LLC,**
**and MANTRA FILMS, INC.,**
  **Defendants.**

**CIVIL ACTION #**
**1:04-CV-2407 (JEC)**

## PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AGAINST MRA HOLDING, LLC AND MANTRA FILMS, INC.

COMES NOW, LINDSEY BULLARD, Plaintiff and moves for partial summary judgment on the following issues:

1.    The defendants did not obtain Ms. BULLARD'S express oral or written consent to use her image in the video or various advertisement .

2.    The defendants are liable for misappropriating Ms. BULLARD'S image for commercial and advertising purpose by placing her on the cover of the videos, in TV advertisements and Internet advertisements.

This 14th day of July, 2005.

Jeff Banks,
Georgia Bar #005445

Banks & Riedel
1301 Shiloh Rd. Ste. 1610
Kennesaw, GA 30144
678-797-6364

L.R. 7.1 Certification

I certify that the foregoing pleading complies with the Local Rule 5.1 for the Northern District

1

RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 1 4 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

LINDSEY BULLARD,
  Plaintiff,
-vs-                                    CIVIL ACTION #
                                        1:04-CV-2407 (JEC)

MEDIA PLAY, INC.,
MRA HOLDING, LLC,
and MANTRA FILMS, INC.,
  Defendants.                /

## PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AGAINST MRA HOLDINGS LLC and MANTRA FILMS, INC

### I. Statement of Facts

LINDSEY BULLARD, was fourteen years old in the Spring of 2001. *Exhibit -2 Bullard Deposition Excerpts, P.5 L. 10.* She went to Panama City, Florida with several of her friends and was chaperoned by her friends' parents, the Osmonds. *Bullard Depo. P16 L. 16-19* . While walking in front of her hotel, the Plaintiff and her friends encountered two men, *Ex-2 Bullard DepoP.16 L. 12-17,* one with a video camera, who asked her to step into the parking lot and then asked her if he could see her "boobs". *Ex-2 Bullard Depo P. 18 L.5-11.* She showed them her breasts and one man recorded the act with his video camera. *Ex-2 Bullard Depo P. 18 L.5-11.* BULLARD thought that the men were just one of the many hundreds of people walking around with cameras.

1

In late fall 2001, LINDSEY BULLARD'S photograph appeared prominently on the cover of a videotape produced and sold by the Defendants entitled *Girls Gone Wild, College Girls Exposed, Volumes 1 and 2*. Exhibit 1. Her image also appeared in television commercials and on an internet advertisement for the video. *Ex-2 Bullard Deposition P.63,64  L. 15-19.* Her image appeared on Girls Gone Wild television commercials during the *Howard Stern* [television] *Show*.

The Defendants MANTRA FILMS, INC. and MRA HOLDINGS LLC, have gained notoriety for their series of tapes marketed under the name "Girls Gone Wild". They make and sell sexually explicit videotapes. They purchased the Plaintiff's recorded indiscretion from a source that they frequently used and incorporated it into the subject videotape *Girls Gone Wild, College Girls Exposed, Volumes 1 and 2*, which the Defendants have sold in at least forty-eight of the fifty states and possibly in Alaska and Hawaii. *Ex- 4 Guttman Depositions p. 82, lines 9-12.* The Defendants used LINDSEY BULLARD'S photograph with her breasts exposed  but blocked out on the videotape package, (*Exhibit 1*), and widely disseminated advertisements on television and on the Defendant's website, all without LINDSEY BULLARD'S consent. *Exhibit-9 Bullard Affidavit.*

2

*Exhibit -3 Francis Deposition Excerpts P.15 L. 10 , P. 16, L. 9.*

The Defendants, MANTRA FILMS, INC. and MRA HOLDINGS, LLC are solely owned by JOSEPH R. FRANCIS, the creator and founder of the *Girls Gone Wild* videotape series. *Ex- 3 Francis depositions p. 5, lines 9-11.* He and his agents and representatives, entice, persuade and coerce young girls into baring their breasts, being photographed at various stages of nudity, and engaging in sexual activity. Owner of MANTRA FILMS and MRA, Joseph Francis, and his agents have been parties to at least several civil actions for the use of underage girls in their sexually explicit videos.

In 2002, Joseph Francis and some of his MANTRA FILMS, INC employees were indicted for racketeering, promoting sexual performance of a child, conspiracy to promote sexual performance of a child, for promoting a child under the age of eighteen to prostitution, possession with intent to distribute obscene material, possession, sale and distribution of obscene material, prostitution, serving alcohol to a minor, contributing to the delinquency of a minor, and possession of oxycodone, among other charges. *Bay County Circuit Court, Case #03001036 pending.*

3

## MEMORADUM OF LAW

### I. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, Answers to Interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court by reference to the materials on file, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986)

### II. CHOICE OF LAW

The publication, distribution and advertising of the video occurred in all fifty states. Generally, a Federal court sitting in diversity applies the choice of law rules of the forum state, <u>Claxton Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). The case at bar involves a multi-state publication that invaded the plaintiff's privacy and had the most significant relationship with the states of Georgia and Florida. The photography occurred in Florida. Florida is one of only three states that MANTRA FILMS, INC records

4

footage of young girls. The videotape was distributed in at least forty-eight of the

fifty states.

In Georgia, the conflict of law rule is *lex loci delictis*, that is the place of the wrong. The publication and marketing of the tape has extended to many jurisdictions, but in Georgia, the publication and marketing had the greatest detrimental effect and impact on LINDSEY BULLARD. She was ridiculed and harassed by fellow students and teachers at her High School. She was forced to change schools in an attempt to extricate herself from the Georgia rejects the Restatement of Conflict of Laws. Florida on the other hand, adopted Restatement (second) of the Conflict of Laws which specifically addresses multi-state invasion of privacy:

> §153 Multi-State Invasion of Privacy: The rights and liabilities that arise from matter that invades a plaintiff's right of privacy and is contained in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in §6. This will usually be the state where the plaintiff was domiciled at the time if the matter complained of was published in that state.

5

Even if the Court were to use "the place where the relationship, if any, between the parties is centered", i.e. Florida, Florida recognizes the invasion of privacy as Georgia does.   The difference is that it is codified in Florida.   Florida and Georgia recognize the four branches of the tort invasion of Privacy.   Two of the four are: misappropriation of the Plaintiff's likeness (by commercial exploitation of a photograph without a consent)   and portraying Plaintiff in a false light (by using her likeness for advertising and tend to falsely portray her as endorsing the product. Here, by falsely suggesting the Plaintiff willingly participated and endorsed the Defendant's videotape).   These are recognized causes of actions in Florida as well as in Georgia.   Cason v. Baskin, 20 So. 2d. 243, Fl. (1944), Forsberg v. Housing Authority of Miami Beach, 455 So. 2d. 373, 386 Fl. (1984), M. L. King, Jr. Center v. Am. Heritage Prod., 250 Ga. 135 (1982).

On balance, these factors favor Georgia and secondly Florida.   However, the results would be the same.

### III.   Defendants Did Not Obtain Ms. Bullard's Express Consent Oral Or Written

It is undisputed that Ms. BULLARD did not consent to the use of her likeness in writing or orally.   Plaintiff's First Request for Admissions, FRANCIS' deposition.

Likewise, the record establishes that the defendants failed to obtain the express oral consent from Ms. BULLARD for the use of her image in the Girls Gone Wild video or advertisements.   It is undisputed that the videographer, while filming the plaintiff, never revealed the purpose or his intended use of videotaping 14-year-old Ms. BULLARD. *Ex-2 Bullard deposition p. 16, lines21-24.* **The defendants purchased the videotape from an entity known as G.M. Video.** *Ex- 3 Francis depositions p. 14, lines 6-8.* It is therefore indisputable that Ms. BULLARD could not, at the time she was videotaped, have expressed any oral consent to the publication of her image in the *Girls Gone Wild College Girls Get Educated* video.   It has been shown that the defendants have no known photographic, written or oral record of a consent. *Ex-3 Francis depositions p. 16, lines 5-9.*   If the G.M. Video at the time of the taping had sought her consent, it would have been on the original footage.   Again despite repeated requests defendants have been unable to produce the original tape and have testified that the original tape shows nothing other than what is on the subject matter tape that is offered for sale, that is the Get Educated tape.   *Ex-4*

*Gutman depositions p. 33, lines 10-23.*

7

Defendants may contend that consent is a material issue of fact that should preclude summary judgment because Ms. BULLARD implied consent to use her likeness simply by appearing in public where the cameras were present and exposing her breasts.  These actions, as a matter of law, do not amount to an express written or oral consent.  Nor can the defendants raise mistake regarding Ms. BULLARD'S consent as a defense.  *Restatement (Third) of Unfair Competition § 46.*  Accordingly, defendants did not obtain the consent required to use Ms. BULLARD'S likeness for commercial use or advertising purposes.  Therefore, summary judgment should be granted in Ms. BULLARD'S favor on this issue.

**IV. Misappropriation of Likeness For Commercial Use**

The Defendants did not obtain express written or oral consent to use the Plaintiff's image for advertising for any commercial purpose.

"The publication of a picture of a person without his [her] consent, as part of an advertisement, for the purpose of exploiting the publisher's business, is a violation of the right of privacy of the person whose picture is reproduced and entitles him [her] to recover without proof of special damage." M. L. King, Jr. Center v. Am. Heritage Prod., 250 Ga. 135 (1982) citing Pavesich v. New England

8

Life Insurance Company, 122 Ga. 190, 191, 50 S.E. 68 (1905).

Regarding the possible conflicts between the right of privacy and the First Amendment, the Georgia Supreme Court has held: "there is in the publication of one's picture for advertising purposes, not the slightest semblance of an expression of an idea, thought, or an opinion, within the meaning of the Constitutional provision which guarantees to a person the right to publish his sentiment on any subject." *M. L. K. Jr. Center*, Supra citing *Pavesitch*, Supra at 219. *M. L. King* summarized that "…[T]he courts in Georgia have recognized the rights of private citizens, *Pavesitch*, *supra*…not to have their names and photographs used for the financial gain of the user without their consent where such use is not authorized as an exercise of freedom of the press…We hold that the appropriation of another's name and likeness, whether such likeness be a photograph or sculpture, without the consent and for the financial gain of the appropriator is a tort in Georgia if the person whose name and likeness is used is a private citizen…*M. L. K. Jr. Center, supra* at 143."

Here, it uncontroverted that the defendants used the 14 year old girl's photograph to promote, advertise, sell and entice customers to purchase the video. It implies

9

that the child is representative of the content of the video.

MANTRA FILMS Media buyer (advertising), Don Cowser, testified that the customer is [in part] purchasing the view of the breasts. And that the commercials block out the breasts in part because the customer would otherwise be getting the product for free. *Exhibit -5 Cowser Depo exerpts P.27 L.10-18*

In one of his many self serving responses to deposition questions, JOSEPH FRANCIS contends that his videos are not sexually graphic. *Ex-3 FRANCIS Depo. P. 51 L. 10-18* Yet, he reluctantly admits that they contain flashing, vaginal areas, simulated masturbation:

Q: Didn't that tape [*Sorrority Girls*] show some women in either engaging in oral sex or acting out oral sex?
A: I don't remember.
Q: Well do any of your tapes have that in it?
A: Some of them, yeah.
Q: Okay. Does any of your tapes show vaginal areas naked?
A: I don't remember.
Q: Okay. Does some of your tapes show vaginal areas naked?
A: Yes.
Q: Would some of your tapes show simulating masturbation?
A: Yeah, some of them do.
Q: All of them, including this one show some flashing; correct?
A: All of them have flashing, yeah.
Q: Okay.
THE DEPONENT: (on cell phone) Hey Baby, I'm in a depo. I'll call you back. Let me call you back.

Executive Vice President also contends their products "they're not of a sexual nature" Gutman depo P/104. L.12

10

Of course the box has a warning: "WARNING! Contains nudity and sexual situations" Exhibit-1 Box Cover

There have been other civil actions against these defendants for using  underage girl's likeness::

In Gritzke v. MRA Holding, LLC, 4:01-CV-495-RH (N. D. Fla., March 15, 2002, Judge Hinkle denied these Defendants', MANTRA FILMS INC. and MRA ,LLC,  Motion to Dismiss and Motion for Summary Judgment. *Exhibit 6.*  The facts of the case were identical to this case.  Ms. Gritske was an underage girl whose photograph and video were used not only as part of the  *Girls Gone Wild* video, but it appeared on the cover of the video/ DVD. There was no expressed consent, either written or oral.  Her photograph was additionally used in internet and television advertising, just as in the case at bar.

Both parties filed Motions for Summary Judgment, and both were denied.

In Lane v. MRA Holdings, LLC d/b/a/ MRA Video, Mantra Films, Inc, et al., Judge Conway granted the Defendant's Motion for Summary Judgment, distinguishing it from the Gritzke case:

> In Gritske v. MRA Holdings, LLC...Judge Hinkle of the Northern District of Florida determined that the Plaintiffs stated a valid claim under § 540.08 by alleging that her half-naked picture was plastered on

11

the front cover of the videotape *Girls Gone Wild* without her authorization…The Plaintiff Gritzke was complaining about the use of her image on the outside cover of the videotape package…In this case, Lane has not alleged that her image was plastered on a billboard or box cover advertising *Girls Gone Wild*." Exhibit-6 Lane Order Granting Summary Judgment

The Lane Court also found that Lane knew that the video would be published, thereby giving her consent.

Another case with similar facts to this case and Gritzke is Bosley vs. Wildwet.com Case No. 4:04-CV-393 in the United States District Court, Northern District of Ohio (March 31, 2004). *Exhibit-8 Order Granting Injunction* Bosley was the  was a news anchorwoman in Ohio for over ten years.  On a trip to Florida, she was in a night club where there was a wet t-shirt contest underway.  While participating in the wet t-shirt contest, she removed her clothing.  The Defendant videotaped the performance for publication and reproduction in the form of videos and DVDs.  The president of Dreamgirls described his company as being similar to *Girls Gone Wild*.  Bosley  at 2.

The video itself showed the woman in various stages of undressed and other women masturbating and engaging in other sexual acts.  The Court noted "the tapes have no plot or commentary apart from the pictures of naked women engaged in sexual acts and displays."  Bosley at 2.

12

Due to the publicity generated by the incident, Bosley at to resign.  The Court held that use of Bosley's image on the cover of the video was not protected under the first amendment, but her image on the video itself was protected. One of the primary limitations upon the right of privacy is that this right does not prohibit the publication of matters of general public interest for the use of the name or picture of a person in connection with a publication of legitimate news.   However, the phrase public or general interest in this connection does not mean mere curiosity. Bosley Citing:  Cason v. Baskin, 155 Fl 198, 216 (Florida 1944).

Just as in the case at bar, the Defendants alleged they did not use the images of Katherine Bosley for a commercial purpose.   The Court disagreed, citing Florida law that defines commercial purpose as trade, commercial or advertising purpose or using a likeness to directly promote a product or service.  Bosley at 3.

Bosley's image was being used on the Defendant's website to sell the tape.  Just as in the present case, the Court found that Bosley gave no written or oral express consent to use her image to promote the sale of sexually related goods.    Most notably, the Court held, " the prominent display of Bosley's name, image and likeness on

13

the cover of the Wildwet Video as well as promotional images of Bosley posted on Wildwett.com clearly constituted advertisement for the video.      Just as in this case, the Defendants argued that the Plaintiff's image should fall under the news, entertainment and creative works exception.    It cited Tyne v. Time Warner Entertainment Co., LLP, 204 Fed. Supp. 2d (Middle District of Florida, 2002) and Lane v. MRA Holdings, LLC., Exhibit-7 (the same defendant as in this case).  The Court held that while the Defendants "would like to draw corollaries between their video and the book/movie The Perfect Storm, at issue in Tyne, no such similarity exists; the present matter primarily involves the sale of goods, merchandise and services, not expressive material.  Attempts to defend the sale of such merchandise on First Amendment grounds through analogies to the marketing of books, magazines and other traditional materials of communication have been typically rejected."  Bosley at 3 Quoting:   The Restatement Third of Unfair Competition, Section 47.   The Bosley Court further noted, "[m]oreover, **that Lane is anomalous case** emphasis added) which holds that 'it is irrefutable that the Girls Gone Wild video is an expressive work created solely for entertainment purposes'".   Quoting:  Lane at 12-13.  "This Court cannot similarly hold that the images in question are

expressive works as they do not contain any creative components or transformative elements." Bosley at 10. "The lack of artistic expression and significant editorial comments clearly distinguishes this case from other cases with First Amendment protection have applied. Bosley at 19. citing Cardtoons, LC vs. Major League Baseball Players Assoc. 95 F. 3d 959, 976 (10th Circuit 1996).

The Bosley Court noted that Lane differed from the Bosley case because in Lane "there was no dispute that the Plaintiff expressly consented to be videotaped." . Bosley at 26 and 27.

## V. FIRST AMENDMENT DEFENSE

The Defendants are asserting a defense to the First Amendment allowing the Plaintiff to recover the misappropriation of likeness for commercial use. The Defendants contend they have a First Amendment right to record and disseminate footage of a news-worthy public event. Even if the Defendants did have such a right, it is irrelevant in this case because the Plaintiff alleges that her photograph was the focus of a videotape package for advertisement, promotion, TV commercials and internet advertising. The photograph and advertisement suggest the Plaintiff's willingness and participation in the endorsement of the product. "The First Amendment provides

15

no right to make an un-consenting individual the poster-person for a commercial product…" Gritzke v. MRA Holding, LLC, case number 4:01-CV-495-RH in its Order Denying the Motion to Dismiss in a case with similar facts and the same defendants MRA and MANTRA FILMS. Exhibit-4 Gritzke, Order denying motion to dismiss.

It is undisputed that Ms. BULLARD'S photograph appears in television advertisements and internet advertisements of the subject matter video *Girls Gone Wild College Girls Exposed*. Ms. BULLARD also appears prominently on the cover of the video/DVD. *Bullard depositions p. 63-64, lines 15-19.   Exhibit 1 - Copy of Video Cover.* Nevertheless, defendants deny that the use amounts to advertising, commercial or trade purpose.   Common sense dictates that these uses are advertisements and the law on this issue leads to the same conclusion.

Defendants' attempts to classify these uses as anything but advertising flies in the face of reality.   The use of a person's likeness to advertise products or merchandise marketed by the user amounts to a use for purpose of trade.     *Restatement (Third) of Unfair Competition § 47.*   In the Gritzke case, which has identical facts and defendants as the present case (with the

16

exception of Media Play) the Court held in its Order
Denying the Motion to Dismiss:

> Defendant also asserts that allowing plaintiff
> to recover on her various theories would
> contravene the First Amendment, because
> defendant says, they had a First Amendment right
> to record and disseminate footage of a
> newsworthy public event. Accepting for purposes
> of argument that the defendants did indeed have
> such a right, this does not help the defendant
> on the instant Motion to Dismiss, because the
> complaint alleges that the defendant made
> plaintiff's photograph a focus of the videotape
> package and advertisements, suggesting
> plaintiff's willing participation and
> endorsement of the product. The First Amendment
> provides no right to make an un-consenting
> individual the poster person for a commercial
> product, as the plaintiff alleges defendant has
> done.   Exhibit-6 Gritzke, supra, Order

Here, Ms. BULLARD'S picture appears prominently on the
center cover of the video cover of the *Girls Gone Wild
College Girls Get Educated* video.   The video cover of
Ms. BULLARD'S image also appears on a number of the
defendants' television advertisements and on websites.
These uses establish that Ms. BULLARD was the focus of the
defendants' advertising.

*Blacks Dictionary, Seventh Edition* defines
advertising: "The action of drawing the public's attention
to something to promote its sale". Executive Vice
President, Mr. Guttman inadvertently admits that her
likeness was used to promote its sale:

17

Q: Well, you're claiming that's not advertising. Is there any reason you would not just write on the front of the video—have print saying—this is a video of a bunch of naked women? Why would you-- pick out a fourteen -- [year old child]

A: Counselor, there is a whole bunch of things that we could have done. We decided to do it this way, all right. **You ask me why we didn't put a dog on the front cover? 'Cause it might attract people that are dog lovers.** (Emphasis added.) Exhibit-4 Guttman Depo P.94  L.6-14

Obviously, the defendants wanted to attract the type of person that wants to see child nudity to purchase there product.

Therefore, Ms. BULLARD was not incidentally included in the defendant's advertising.  Instead the defendants exploited her image over and over to sell their product. See Kyser-Smith v. Upscale Communications, 873 F. Supp. 1519, 1526 (M.D. Ala. 1995).  Kyser-Smith held that the plaintiff's image was used for the commercial benefit of the defendant where the defendant selected the plaintiff's photograph from many to sell the defendant's products. Defendant's self-serving assertions that the likeness of the plaintiff was not used for advertising does not preclude summary judgment in the plaintiff's favor.

## VI.  The Defendants Attempt to Rely on the Newsworthy Exception to Avoid the Classification of the Advertisements as Advertisements

Just as the defendants make self-serving statements that the advertising is not advertising, they also make

18

assertions that the Girls Gone Wild video is bona fide news reporting having current legitimate public interest. First, the exception does not apply when the person's likeness is used for advertising purposes.    Regardless, the record establishes that the video is clearly not a news report or documentary on a newsworthy event as the defendants contend. The videotape which is the subject matter of this action does not even come close to arguably being news. When asked about the newsworthiness of the videos, Ronald Gutman stated that the Girls Gone Wild videos content is newsworthy to public interest as an expressive work. *Gutman depositions p. 111, line 9.*    Joseph Francis stated that the videos were documentaries. *Francis depositions p. 35, lines 10-11.* As noted above, production manager Cowser stated the obvious:  unequivocally that the customer purchasing the video is buying a view of the breasts of the girls in the videos: *Cowser depositions p. 27, lines 9-18.*    Thus even if, arguendo, the videotape was a news report or documentary, summary judgment in favor of the plaintiff would still be warranted since Ms. BULLARD'S use

The defendants selected Ms. BULLARD'S videotaped image from many others that were in the videos and included it in their advertisements for the very purpose of selling their videos.    The process of selection establishes that

Ms. BULLARD'S image was used for commercial purposes. *See* Kyser-Smith, 873 F. Supp. at 1526 supra (finding the defendant that selected plaintiff's photograph for use in advertisements of its products did so for its own commercial advantage). *See also Restatement (Second) of Torts § 625c* (it is only when publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with a name or likeness that the right to privacy is invaded). If Ms. BULLARD'S image would not have promoted the sales of the defendants' videos, the defendants would not have selected her to appear on the cover or in other advertisements. Accordingly defendants included Ms. BULLARD'S likeness in their advertisements to obtain a commercial benefit, specifically more sales, and this is exactly the type of commercial exploitation that runs afoul of the plaintiff's right to privacy.

There is no generally recognized right for persons who obtains a picture, even under lawful circumstances to use it in advertising a product, especially when the product is offensive. In this case, the use of the 14-year-old child's image in association with the defendants' sexually explicit products renders the advertisements even more exploitative. The defendants knew or should have known from the photographs that Ms. BULLARD was a young teenager.

20

Likewise, the defendant should have reasonably known that using Ms. BULLARD would offend the sensibilities of a normal person. *Douglas v. Hustler Magazine,* 769 F.2d 1128 (7th Cir. 1985) cert. denied, 475 U.S. 1094 (1986). This case recognized a plaintiff's common law right of privacy where Hustler ran nude photographs of a celebrity without consent even though she had agreed to appear in Playboy Magazine.

Professional video producers like the defendants are on notice that consent is required for advertising news and they are not seriously inconvenienced by having to obtain a fully informed consent for such use or for paying for the privilege if they do not. *See* Zacchini v. Scripps-Howard Broadcasting Company, 433 U.S. 562 (1997).

The video cover and advertisements alone demonstrate that Ms. BULLARD is the prominent focus of defendants' advertisements.

The incidental advertising exceptions in newsworthy events has been expressly rejected in situations where newsworthy events covered by the media was later used for the purpose of soliciting buyers for the defendants' products. For example in *Flores v. Mosler Safe Company*, 164 N.E.2d 863 (N.Y. App. 1959) the defendants included in their advertisements the reprint of a news photo and accompany captions and news account as they originally appeared in the

New York Times.  The Court found a violation of the New York Statutory Rights Privacy and rejected the defendants' contention that the use of the plaintiff's name was merely incidental mentioning his name in a news report unrelated to the advertiser's product.   The Court held that the advertisement was directly related to the defendants' product and the relationship was undoubtedly the reason for selecting the particular picture to illustrate the defendants' circular.  Thus incidental advertising exception is not applicable where the defendant selects the plaintiff even when the selection is from a newsworthy or entertainment work and places the plaintiff in an advertisement in order to obtain commercial benefit.  *See also* Continental Company v. Reed, 119 Ind. App. 643, 86 N.E.2d. 306 (1949); and Reilly v. Rapperswill Corp., 50 A.D. 2d. 342, 377 N.Y.S. 2d 488 (1975). Defendants, as the parties invoking the newsworthy exception have the burden to prove its application.  Armstrong. v. *Ormond in the Pines,* 734 So. 2d 596 (Fla. 1st DCA 1999).  They must show a bona fide news report or presentation in a news medium or publication, current and legitimate public interest and no advertising purpose.   The content of the subject matter video establishes that there is no bona fide purpose such as a news report and no legitimate public interest.   The

advertising using Ms. BULLARD'S picture was purely advertising and does not purport to have any bona fide news content or purpose. Indeed, nothing on the video establishes where or when it takes place. In fact, the photograph of Ms. BULLARD has the background removed and a blue backdrop in its place, therefore obliterating any possibility of informing the potential purchaser of the tape to know where the photograph was taken or its context. Exhibit -1 Cover of Box, Exhibit-3 Francis Deposition p. 47, line 21 and p. 49, line 4.

The *Girls Gone Wild College Girls Exposed* video contains a collection of short clips depicting young women induced to expose their breasts or in some cases other parts of their body. Most of the clips last only a few seconds and the same sequence is repeated with different women. Unlike a bona fide news publication the video lacks any social useful content. For example, the videotape omits any footage of discussion of any event. It contains no public figures just anonymous persons. It lacks any narration or substantive dialogue; it omits any information about the participant's motivation or any reactions or consequences of their actions; it was released eight or nine months after it was photographed and it continues to be sold today, four years after the videotape was recorded.

23

Thus the overall content is uninteresting or offensive to most viewers and devoid of any bona fide news or any legitimate public interest.  Indeed the videotape is merely one like many of dozens produced and marketed by the defendants having the exact same content which is only to attract viewers who are addicted to this type of content.

It is the newsworthiness exception that stem from matters of public interest or general concern that are constitutionally protected speech and defamation cases the Supreme Court has held that:

> Now it is implicit in these decisions… that not
> all items or feature articles are
> constitutionally protected… [n]ewsworthiness is
> that which is well calculated to generate wide
> reader interest and thus may be a legitimate
> area of exploitation by the communications
> media.   While we perceive a clear distinction
> between mere curiosity or the undeniable
> prevalent morbid or prurient intrigue with
> scandal or with a potentially humorous
> misfortune of others on the one hand and real
> public or general concern on the other.  If all
> news were protected they would of course be no
> need for a public concern category.  Rosenbloom
> v. Metromedia Inc., 403 U.S. 29 (1971).

The Court went on to hold that matters of real public or general interest include matters involving governmental affairs; and matters which invoke common and predominant public activity, participation or indulgence in cogitation, study in debate, [such as] sporting events, performing fine arts, morality and religion, the sciences and matters

24

relating to the general health, well being and general comfort of the public as a whole. *Id.* at 49. However the Court drew the line by holding that allegations of marital infidelity in the *Firestone* divorce case were not matters of real public concern but were matters of prurient curiosity. Id. at 752. The Court also noted that a publisher cannot create his own "matter of concern" and thereby engage in "bootstrapping" or creating a springboard from which to defame or sensationalize. Id. at 752. Likewise in Briscoe v. Reader's Digest Association, Inc., 483 P.2d. 34, 38 (Cal. 1971) the Court provided the following analysis:

> Particularly deserving of the First Amendment protection are reports of "hot news" items of possible immediate public concern or interest. The need for constitutional protection is much greater under these circumstances, where deadlines must be met and quick decisions made that in cases where more considered editorial judgments are possible, citing Rosenbloom v. Metromedia. Most factual reporting concerns current events. For example, in *Time Inc. v. Hill, supra*, 285 U.S. 374, 383-384, fn. 7, the court cited 22 cases in which the right of privacy gave way to the right of the press to publish matters of public interest. Seventeen of at least 22 cases involved events which had occurred quite recently.

This is not to say, however, that all factual reports of current events have been held absolutely privileged. *See, Commonwealth v. Weisman, supra,* 249 N.E.2d 610 [film showing conditions of mental hospital including naked inmates, forced feedings, masturbations, sadism with

25

individuals identifiable.] *Lambert v. Dow Chemical Company* (La. App. 1968 215 So.2d 673) [Identify picture of plaintiff's unsightly wounds.]; *Daily Times Democrat v. Graham* (1964) 276 Ala. 380 [Identifiable picture of plaintiff with dress blown above her waist.]

Again, even if the video itself could be deemed newsworthy, the defendant's prominent and repeated use of the picture of Ms. BULLARD'S face and upper body showing her lifting her blouse on the video cover are purely advertising issues and have no newsworthy aspect but merely used to attract those with a prurient interest in partially disrobed young girls, here a child. Thus, there is no protection for such advertising and the commercial use of Ms. BULLARD'S image without her consent is not protected.

## CONCLUSION

For the reasons stated herein, the Court should enter partial summary judgment in Ms. BULLARD'S favor on the issue of consent and misappropriation.

This 14th day of July, 2005.

Jeff Banks,
Georgia Bar #005445

1301 Shiloh Rd. Ste. 1610
Kennesaw, GA 30144
678-797-6364

L.R. 7.1 Certification

26

I certify that the foregoing Brief in Support of Motion for
Summary Judgment complies with the Local Rule 5.1 for the
Northern District

JEFF BANKS