## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**LINDSEY BULLARD,**
     **Plaintiff,**

**-vs-**
                        **CIVIL ACTION #**
                        **1:04-CV-2407 (JEC)**

**MEDIA PLAY, INC.,**
**MRA HOLDING, LLC,**
**and MANTRA FILMS, INC.,**
     **Defendants.**

### PLAINTIFF'S RESPONSE TO MRA HOLDING, LLC'S AND MANTRA FILMS, INC.'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Lindsey Bullard, and responds to the Defendant's Motion for Summary Judgment, as follows:

### I.  Statement of Facts

LINDSEY BULLARD, was fourteen years old in the Spring of 2001. *Exhibit -2 Bullard Deposition Excerpts, P.5 L. 10.*  She went to Panama City, Florida with several of her friends and was chaperoned by her friends' parents, the Osmonds. *Bullard Depo. P16 L. 16-19 .*  While walking in front of her hotel, the Plaintiff and her friends encountered two men, *Ex-2 Bullard DepoP.16 L. 12-17,* one with a video camera, who asked her to step into the parking lot and then asked her if he could see her "boobs". *Ex-2 Bullard Depo P. 18 L.5-11.*  She showed them her breasts and one man recorded the act with his video camera.  *Ex-2 Bullard Depo P. 18 L.5-11.*

BULLARD thought that the men were just one of the many hundreds of people walking around with cameras.

In late fall 2001, LINDSEY BULLARD'S photograph appeared prominently on the cover of a videotape produced and sold by the Defendants entitled *Girls Gone Wild, College Girls Exposed, Volumes 1 and 2*. Exhibit 1. Her image also appeared in television commercials and on an internet advertisement for the video. *Ex-2 Bullard Deposition P.63,64 L. 15-19*. Her image appeared on Girls Gone Wild television commercials during the *Howard Stern* [television] *Show*.

The Defendants MANTRA FILMS, INC. and MRA HOLDINGS LLC, have gained notoriety for their series of tapes marketed under the name "Girls Gone Wild". They make and sell sexually explicit videotapes. They purchased the Plaintiff's recorded indiscretion from a source that they frequently used and incorporated it into the subject videotape *Girls Gone Wild, College Girls Exposed, Volumes 1 and 2*, which the Defendants have sold in at least forty-eight of the fifty states and possibly in Alaska and Hawaii. *Ex- 4 Gutman Depositions p. 82, lines 9-12*. The Defendants used LINDSEY BULLARD'S photograph with her breasts exposed but blocked out on the videotape package, (*Exhibit 1)*, and widely disseminated advertisements on television and on the Defendant's website, all without

LINDSEY BULLARD'S consent. *Exhibit-2 Bullard P. L. Depo Exhibit - 3 Francis Deposition Excerpts P.15 L. 10 , P. 16, L. 9.*

The Defendants, MANTRA FILMS, INC. and MRA HOLDINGS, LLC are solely owned by JOSEPH R. FRANCIS, the creator and founder of the *Girls Gone Wild* videotape series. *Ex- 3 Francis depositions p. 5, lines 9-11*.

Cowser, the media buyer for MANTRA FILMS deposed that  the product that the defendant is selling [in part] is [pictures of] naked breasts and that the reason Bullard's breasts  are blocked out  is that to do otherwise would give the customer the product for free. *Cowser Depo. P. 27 L10-18* The purchase of one  of the defendant's products directly leads to the purchase of others.  When a customer purchases a video, they will receive additional *Girls Gone Wild*  videotapes once a month until the customer tells them to stop sending them. *Cowser Depo P.  21 L. 12-23   excerpts Exhibit 4.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, Answers to Interrogatories and admissions on file, together with the

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court by reference to the materials on file, that there are no genuine issues of material fact to be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986)

### III.  Argument and Citation of Authority

### A.  Choice of Law

A federal court sitting in diversity applies the choice of law rules of the forum state.  As the Defendants acknowledge, in Georgia, the conflict of law rule is *lex loci delectus*, that is "the place of the wrong."  <u>Claxton Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).

**The publication and marketing had the greatest detrimental effect and impact on LINDSEY BULLARD in Georgia where she was ridiculed and harassed by fellow students and teachers at her school. She was forced to change schools in an attempt to extricate herself from the notoriety and harassment.**  Bullard Affidavit, Exhibit 9, Paragraph 6.

The publication, distribution and advertising of the video occurred in all fifty states.   The case at bar involves a multi-state publication that

invaded the plaintiff's privacy and had the most significant effect and damage to the Plaintiff in the State of Georgia.

Georgia recognizes the four branches of the tort invasion of privacy. Two of the four branches are:  misappropriation of the plaintiff's likeness (by commercial exploitation of a photograph without a consent) and portraying the plaintiff in a false light by using her likeness for  advertising which tend to falsely portray  her as endorsing the product .

Here, by using Plaintiff's image for advertising and falsely suggesting Plaintiff Lindsey Bullard willingly participated and endorsed the Defendant's videotape, defendants have portrayed Plaintiff in a false light and have used her likeness for their own commercial gain.   These are recognized causes of actions in Georgia as well as in Florida. M. L. King, Jr. Center v. Am. Heritage Prod., 250 Ga. 135 (1982).  Cason v. Baskin, 20 So. 2d. 243, Fl. (1944); Forsberg v. Housing Authority of Miami Beach, 455 So. 2d. 373, 386 Fl. (1984);

Accordingly, this Court should choose Georgia law, where the greatest injury to Plaintiff occurred.

### B. Misappropriation of Likeness For Commercial Use

It is undisputed that the Defendants did not obtain express written or oral consent to use the Plaintiff's image for advertising for any commercial purpose. *Gutman Dep P. 84 L.21, Depo Francis P. 54 L18-P.55 L20*

"The publication of a picture of a person without his [her] consent, as part of an advertisement, for the purpose of exploiting the publisher's business, is a violation of the right of privacy of the person whose picture is reproduced and entitles him [her] to recover without proof of special damage." M. L. King, Jr. Center v. Am. Heritage Prod., 250 Ga. 135 (1982) citing Pavesich v. New England Life Insurance Company, 122 Ga. 190, 191, 50 S.E. 68 (1905).

Regarding the possible conflicts between the right of privacy and the First Amendment, the Georgia Supreme Court has held: "there is in the publication of one's picture for advertising purposes, not the slightest semblance of an expression of an idea, thought, or an opinion, within the meaning of the Constitutional provision which guarantees to a person the right to publish his sentiment on any subject." M. L. K. Jr. Center, **Supra**, citing Pavesitch, **Supra** at 219. M. L. King summarized that "…[T]he courts in Georgia have recognized the rights of private citizens, *Pavesitch*, *supra*…not to have their names and photographs used for the financial gain of the user without their consent where such use is not authorized as an

6

exercise of freedom of the press…We hold that the appropriation of another's name and likeness, whether such likeness be a photograph or sculpture, without the consent and for the financial gain of the appropriator is a tort in Georgia if the person whose name and likeness is used is a private citizen…M. L. K. Jr. Center, supra at 143."

Here, it is uncontroverted that the defendants used the 14 year old girl's photograph to promote, advertise, sell and entice customers to purchase the video which leads to the customers purchasing additional videos. The title is "College Girls Exposed" yet they put a picture of a 14 year old child on the cover with her bare breast covered by the words "Get Educated!"

MANTRA FILMS Media buyer (advertising), Don Cowser, testified that the customer is [in part] purchasing the view of the breasts. And that the commercials block out the breasts because the customer would otherwise be getting the product for free. *Exhibit -5 Cowser Depo exerpts P.27 L.10-18*

In one of his many self serving responses to deposition questions, JOSEPH FRANCIS contends that his videos are not sexually graphic. *Ex-3 FRANCIS Depo. P. 51 L. 10-18* Yet, he reluctantly admits that they contain flashing, vaginal areas, simulated masturbation and oral sex, See Exhibit 3, Deposition of Joseph Francis. Likewise, Executive Vice President Ron

Gutman   also contends that their products are "not of a sexual nature" Gutman depo P/104. L.12.  The box has a warning: "WARNING! Contains nudity and sexual situations,"  **See** Exhibit-1 Box Cover.

In  Gritzke  v.  MRA  Holding,  LLC, 4:01-CV-495-RH (N. D. Fla., March 15, 2002,  Judge Hinkle denied these Defendants', MANTRA FILMS INC. and MRA's,  Motion to Dismiss and Motion for Summary Judgment. *Exhibit 6 Order of Motion To Dismiss in Gritzke.*   The facts of the Gritzke case were identical to this case.  Ms. Gritzke was an underage girl whose photograph and video were used not only as part of the  *Girls Gone Wild* video, but it appeared on the cover of the video/ DVD.  There was neither written nor oral consent.  Her photograph was additionally used in internet and television advertising, just as in the case at bar.

Both parties filed Motions for Summary Judgment, and both were denied.

In  Lane  v.  MRA  Holdings,  LLC  d/b/a/  MRA  Video,  Mantra Films, Inc, et al., Judge Conway granted the Defendant's Motion for Summary Judgment, distinguishing it from the Gritzke case:

> In Gritske v. MRA Holdings, LLC…Judge Hinkle of the Northern District of Florida determined that the Plaintiffs stated a valid claim under § 540.08 by alleging that her half-naked picture was plastered on the front cover of the videotape *Girls Gone Wild* without her authorization…The Plaintiff Gritzke was complaining about the use of her image on the outside cover of the videotape package…In this case,

Lane has not alleged that her image was plastered on a billboard or box cover advertising *Girls Gone Wild*." *Exhibit-6* <u>*Lane*</u> *Order Granting Summary Judgment*.

The <u>Lane</u> Court also found that Lane knew that the video would be published, thereby giving her consent.  <u>Lane v. MRA Holdings, LLC d/b/a/ MRA Video, Mantra Films, Inc, et al.</u>, CASE NO (2004 M.D. Fla.).

Another case with similar facts to this case and <u>Gritzke</u>  is <u>Bosley vs. Wildwet.com</u> Case No. 4:04-CV-393 in the United States District Court, Northern District of Ohio (March 31, 2004). *Exhibit-8 Order Granting Injunction.*  Bosley was a news anchorwoman in Ohio for over ten years. On a trip to Florida, she was in a night club where there was a wet t-shirt contest underway.   While participating in the wet t-shirt contest, she removed her clothing.   The Defendant videotaped the performance for publication and reproduction in the form of videos and DVDs.   The president of Dreamgirls described his company as being similar to *Girls Gone Wild.*  <u>Bosley</u>  at 2.  The court found that there was no consent even though the purpose of the videotaping was announced and there was a sign at the entrance which stated the same.

The video itself showed the woman in various stages of undress and other women masturbating and engaging in other sexual acts.  The Court

noted "the tapes have no plot or commentary apart from the pictures of naked women engaged in sexual acts and displays." <u>Bosley</u> at 2.

The Court held that use of Bosley's image on the cover of the video was not protected under the first amendment, but her image on the video itself was protected. One of the primary limitations upon the right of privacy is that this right does not prohibit the publication of matters of general public interest for the use of the name or picture of a person in connection with a publication of legitimate news.   However, the phrase public or general interest in this connection does not mean mere curiosity.   <u>Bosley citing</u>: <u>Cason v. Baskin</u>, 155 Fl 198, 216 (Florida 1944).

Just as in the case at bar, the Defendants alleged they did not use the images of Katherine Bosley for a commercial purpose.  The Court disagreed, citing Florida law that defines commercial purpose as trade, commercial or advertising purpose or using a likeness to directly promote a product or service.  <u>Bosley</u> at 3.

Bosley's image was being used on the Defendant's website to sell the tape.  Just as in the present case, the Court found that Bosley gave no written or oral express consent to use her image to promote the sale of sexually related goods even though in Bosley, there was a sign as patrons walked through the club entrance and various other places stating that there would

be videotaping and an announcer specifically announced that the event was being videotaped for a Dreamgirls production.   In the case at bar, BULLARD had no notice whatsoever that her photograph would be used for a commercial purpose.

Most notably, the Court held, " the prominent display of Bosley's name, image and likeness on the cover of the Wildwet Video as well as promotional images of Bosley posted on Wildwett.com clearly constituted advertisement for the video.  Just as in this case, the Defendants argued that the Plaintiff's image should fall under the news, entertainment and creative works exception.  It cited Tyne v. Time Warner Entertainment Co., LLP, 204 Fed. Supp.  2d (Middle District of Florida, 2002)  and *Lane v. MRA Holdings, LLC., Exhibit-7* (the same defendant as in this case).  The Court held that while the Defendants "would like to draw corollaries between their video and the book/movie *The Perfect Storm*, at issue in Tyne, no such similarity exists; the present matter primarily involves the sale of goods, merchandise and services, not expressive material.  Attempts to defend the sale of such merchandise on First Amendment grounds through analogies to the marketing of books, magazines and other traditional materials of communication have been typically rejected." Bosley at 3 Quoting: The Restatement Third of Unfair Competition, Section 47.  The Bosley Court

further noted, "[m]oreover**, that __Lane__ is an anomalous case** emphasis added) which holds that 'it is irrefutable that the Girls Gone Wild video is an expressive work created solely for entertainment purposes'". <u>Quoting</u>: <u>Lane</u> at 12-13.  "This Court cannot similarly hold that the images in question are expressive works as they do not contain any creative components or transformative elements." <u>Bosley</u> at 10.   "The lack of artistic expression and significant editorial comments clearly distinguishes this case from other cases where First Amendment protections have been applied. <u>Bosley</u> at 19. **citing** <u>Cardtoons, LC vs. Major League Baseball Players Assoc.</u> 95 F. 3d 959, 976 (10th Circuit 1996).

## C. First Amendment Defense

The Defendants are asserting a First Amendment defense to Plaintiff's claim of misappropriation of likeness for commercial use.  The Defendants contend they have a First Amendment right to record and disseminate footage of a news-worthy public event.  Even if the Defendants did have such a right, it is irrelevant in this case because the Plaintiff alleges that her photograph was the focus of a videotape package for advertisement, promotion, TV commercials and internet advertising.  The photograph and advertisement suggest the Plaintiff's willingness and participation in the endorsement of the product.  "The First Amendment provides no right to

make an un-consenting individual the poster-person for a commercial product…" Gritzke v. MRA Holding, LLC, case number 4:01-CV-495-RH in its Order Denying the Motion to Dismiss in a case with similar facts and the same defendants MRA and MANTRA FILMS. Exhibit- 6, Gritzke, Order denying motion to dismiss.

It is undisputed that Ms. BULLARD'S photograph appears in television advertisements and internet advertisements of the subject matter video *Girls Gone Wild College Girls Exposed.* Ms. BULLARD also appears prominently on the cover of the video/DVD. *Bullard depositions p. 63-64, lines 15-19.  Exhibit 1 - Copy of Video Cover.*  Nevertheless, defendants deny that the use amounts to advertising, commercial or trade purpose. Defendants' attempts to classify these uses as anything but advertising flies in the face of reality.  The use of a person's likeness to advertise products or merchandise marketed by the user amounts to a use for purpose of trade. *Restatement (Third) of Unfair Competition § 47.*  In the Gritzke case, which has identical facts and defendants as the present case (with the exception of Media Play) the Court held in its Order Denying the Motion to Dismiss:

> Defendant also asserts that allowing plaintiff to recover on her various theories would contravene the First Amendment, because defendant says, they had a First Amendment right to record and disseminate footage of a newsworthy public event. Accepting for purposes of argument that the defendants did indeed have such a right, this does not help the defendant on

13

the instant Motion to Dismiss, because the complaint alleges that the defendant made plaintiff's photograph a focus of the videotape package and advertisements, suggesting plaintiff's willing participation and endorsement of the product. The First Amendment provides no right to make an un-consenting individual the poster person for a commercial product, as the plaintiff alleges defendant has done.   Exhibit-6 <u>Gritzke, supra</u>, Order Denying Motion to Dismiss

Here, Ms. BULLARD'S picture appears prominently on the center cover of the video cover of the *Girls Gone Wild College Girls Get Educated* video.   The video cover of Ms. BULLARD'S image also appeared on a number of the defendants' television advertisements and on websites. These uses establish that Ms. BULLARD was the focus of the defendants' advertising.

 *Blacks Dictionary, Seventh Edition* defines advertising: "The action of drawing the public's attention to something to promote its sale". Executive Vice President, Mr. Guttman inadvertently admits that her likeness was used to promote its sale:

Q: Well, you're claiming that's not advertising. Is there any reason you would not just write on the front of the video—have print saying—this is a video of a bunch of naked women? Why would you-- pick out a fourteen -- [year old child]

A: Counselor, there is a whole bunch of things that we could have done. We decided to do it this way, all right. **You ask me why we didn't put a dog on the front cover? 'Cause it might attract people that are dog lovers.** (Emphasis added.) *Exhibit- 4 Guttman Depo P.94  L.6-14.*

Obviously, the defendants wanted to attract the type of person that wants to see child nudity to purchase their product, thereby specifically choosing BULLARD'S image to plaster on the center cover of the video box.

Therefore, Ms. BULLARD was not incidentally included in the defendant's advertising.  Instead the defendants exploited her image over and over to sell their product.  **See** <u>Kyser-Smith v. Upscale Communications</u>, 873 F. Supp. 1519, 1526 (M.D. Ala. 1995).  <u>*Kyser-Smith*</u> held that the plaintiff's image was used for the commercial benefit of the defendant where the defendant selected the plaintiff's photograph from many to sell the defendant's products.  Defendant's self-serving assertions that the likeness of the plaintiff was not used for advertising does not preclude summary judgment in the plaintiff's favor.

### D.  The Defendants Attempt to Rely on the Newsworthy Exception to Avoid the Classification of the Advertisements as Advertisements

Just as the defendants make self-serving statements that the advertising is not advertising, they also make assertions that the Girls Gone Wild video is bona fide news reporting having current legitimate public interest.  First, the exception does not apply when the person's likeness is used for advertising purposes. <u>M. L. King, Jr. Center supra</u>  Regardless, the record establishes that the video is clearly not a news report or documentary

15

on a newsworthy event as the defendants contend.  The videotape which is the subject matter of this action does not even come close to arguably being news.  As noted above, production manager Cowser stated the obvious: unequivocally that the customer purchasing the video is buying a view of the breasts of the girls in the videos:  *Cowser depositions p. 27, lines 9-18.*

Robert Ruggles, retired professor and Dean of The School of Journalism and Graphic Communications at Florida A&M University, and is an experienced journalist, submitted his affidavit to rebut the his opinion of Francis*.  Affidavit of Ruggles Exhibit 10*.  Ruggles opines that the subject matter tape lacks all of the elements of newsworthiness.  He further opines that repeated exposing or flashing events in a single product is not newsworthy content under the standards of the journalism profession.  He further opines that the tape is not a documentary either.   "The term documentary is a form of news, including a retelling of a major news story in a cohesive way after it has been reported in bits and pieces over hours, days, weeks or perhaps even years subject to the omissions and inaccuracies of deadline pressure."    Affidavit Ruggles Exhibit 10. The defendants selected Ms. BULLARD'S videotaped image from many others that were in the video and included it in their advertisements for the very purpose of selling their videos.  The process of selection establishes that Ms. BULLARD'S image

was used for commercial purposes.  *See* <u>Kyser-Smith</u>,  873 F. Supp. at 1526 <u>supra</u> (finding the defendant that selected plaintiff's photograph for use in advertisements of its products did so for its own commercial advantage).  *See also Restatement (Second) of Torts § 625c* (it is only when publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with a name or likeness that the right to privacy is invaded).  If Ms. BULLARD'S image would not have promoted the sales of the defendants' videos, the defendants would not have selected her to appear on the cover or in other advertisements.  Accordingly defendants included Ms. BULLARD'S likeness in their advertisements to obtain a commercial benefit, specifically more sales, and this is exactly the type of commercial exploitation that runs afoul of the plaintiff's right to privacy.

There is no generally recognized right for persons who obtains a picture, even under lawful circumstances to use it in advertising a product, especially when the product is offensive.   In this case, the use of the 14-year-old child's image in association with the defendants' sexually explicit products renders the advertisements even more exploitative.  The defendants knew or should have known from the photographs that Ms. BULLARD was a young teenager.  Likewise, the defendant should have reasonably known that using Ms. BULLARD would offend the sensibilities

of a normal person.  *Douglas v. Hustler Magazine,* 769 F.2d 1128 (7th Cir. 1985) cert. denied, 475 U.S. 1094 (1986).  This case recognized a plaintiff's common law right of privacy where Hustler ran nude photographs of a celebrity without consent even though she had agreed to appear in Playboy Magazine.

Professional video producers like the defendants are on notice that consent is required for advertising and they are not seriously inconvenienced by having to obtain a fully informed consent for such use or for paying for the privilege if they do not.  *See* Zacchini v. Scripps-Howard Broadcasting Company, 433 U.S. 562 (1997).

The video cover and advertisements alone demonstrate that Ms. BULLARD is the prominent focus of defendants' advertisements.

The incidental advertising exceptions in newsworthy events has been expressly rejected in situations where newsworthy events covered by the media was later used for the purpose of soliciting buyers for the defendants' products.  For example in *Flores v. Mosler Safe Company*, 164 N.E.2d 863 (N.Y. App. 1959) the defendants included in their advertisements the reprint of a news photo and accompanying captions and news account as they originally appeared in the New York Times.  The Court found a violation of the New York Statutory Rights Privacy and rejected the defendants'

contention that the use of the plaintiff's name was merely incidental mentioning his name in a news report unrelated to the advertiser's product. The Court held that the advertisement was directly related to the defendants' product and the relationship was undoubtedly the reason for selecting the particular picture to illustrate the defendants' circular. Thus, the incidental advertising exception is not applicable where the defendant selects the plaintiff even when the selection is from a newsworthy or entertainment work and places the plaintiff in an advertisement in order to obtain commercial benefit. *See also* Continental Company v. Reed, 119 Ind. App. 643, 86 N.E.2d. 306 (1949); and Reilly v. Rapperswill Corp., 50 A.D. 2d. 342, 377 N.Y.S. 2d 488 (1975). Defendants, as the parties invoking the newsworthy exception have the burden to prove its application. Armstrong. v. *Ormond in the Pines,* 734 So. 2d 596 (Fla. 1st DCA 1999). They must show a bona fide news report or presentation in a news medium or publication, current and legitimate public interest and no advertising purpose. The content of the subject matter video establishes that there is no bona fide purpose such as a news report and no legitimate public interest. The advertising using Ms. BULLARD'S picture was purely advertising and does not purport to have any bona fide news content or purpose. Indeed, nothing on the video establishes where or when it takes place. In fact, the

photograph of Ms. BULLARD has the background removed and a blue backdrop in its place, therefore obliterating any possibility of informing the potential purchaser of the tape to know where the photograph was taken or its context.  *Exhibit -1 Cover of Box, Exhibit-3 Francis  Deposition p. 47, line 21 and p. 49, line 4.*

Unlike a bona fide news publication the video lacks any social useful content.  For example, the videotape omits any footage of discussion of any event.  It contains no public figures, just anonymous persons.  It lacks any narration or substantive dialogue; it omits any information about the participant's motivation or any reactions or consequences of their actions; it was released eight or nine months after it was photographed and it continues to be sold today, four years after the videotape was recorded.

Thus the overall content is uninteresting or offensive to most viewers and devoid of any bona fide news or any legitimate public interest.  Indeed the videotape is merely one like many dozens produced and marketed by the defendants having the exact same content which is only to attract viewers who are addicted to this type of content.

It is the newsworthiness exception that stems from matters of public interest or general concern that are constitutionally protected speech in which the Supreme Court has held that:

> Now it is implicit in these decisions… that not all items or feature articles are constitutionally protected… [n]ewsworthiness is that which is well calculated to generate wide reader interest and thus may be a legitimate area of exploitation by the communications media. While we perceive a clear distinction between mere curiosity or the undeniable prevalent morbid or prurient intrigue with scandal or with a potentially humorous misfortune of others on the one hand and real public or general concern on the other. If all news were protected they would of course be no need for a public concern category. <u>Rosenbloom v. Metromedia Inc.,</u> 403 U.S. 29 (1971).

The Court went on to hold that matters of real public or general interest include matters involving governmental affairs; and matters which invoke common and predominant public activity, participation or indulgence in cogitation, study and debate, [such as] sporting events, performing fine arts, morality and religion, the sciences and matters relating to the general health, well being and general comfort of the public as a whole. *Id.* at 49. However the Court drew the line by holding that allegations of marital infidelity in the *Firestone* divorce case were not matters of real public concern but were matters of prurient curiosity. **Id**. at 752. The Court also noted that a publisher cannot create his own "matter of concern" and thereby engage in "bootstrapping" or creating a springboard from which to defame or sensationalize. **Id**. at 752.

Again, even if the video itself could be deemed newsworthy, the defendant's prominent and repeated use of the picture of Ms. BULLARD'S

face and upper body showing her lifting her blouse on the video cover are purely advertising issues and have no newsworthy aspect but merely used to attract those with a prurient interest in partially disrobed young girls, here a child.   Thus, there is no protection for such advertising and the commercial use of Ms. BULLARD'S image without her consent is not protected.

### E.  The Defendants Mischaracterize  and Misstate The <u>Lane</u> And <u>Gritzke</u> Cases

The Defendants characterize the <u>Lane</u> case as "a case virtually identical to the instant matter," *Defendants' Motion for Summary Judgment Page 12*.  Both the <u>Lane</u> case and the <u>Gritzke</u> case had the same defendants, yet the Court in <u>Lane</u> specifically distinguishes itself from the <u>Gritzke</u> case, stating that the <u>Gritzke</u> case is different because, in <u>Gritzke</u>, the plaintiff is displayed on the cover of the video.

In both cases, MRA and Mantra filed for summary judgment.  The defendants prevailed in <u>Lane</u>, which is not identical to the instant matter. The plaintiff prevailed in the <u>Gritzke</u> case.  In <u>Lane</u>, the underage girl is in the video and not on the cover or in any of the advertisements.

The Defendants are being somewhat stealthy by burying <u>Gritzke</u> in footnote 9 on page 15.  Even then, the footnote incorrectly cites it.

First, the Defendants **never** disclose to the Court that <u>Gritzke</u> is identical to this case.  In <u>Gritzke</u>, the plaintiff was on the cover of the video and her likeness was similarly used in advertising, as is in the instant case.

Second, the Defendant says that the District Court, "**without citing any authority"**, held that the plaintiff had sufficiently stated a claim where the plaintiff had pled that the defendant had published her photograph for a commercial and advertising purpose, specifically on the packaging of defendant's videotapes and in advertisements therefore, and did so without her permission. *Exhibit 6 – Gritzke Order*.

This is apparently misrepresented "because the <u>Gritzki</u> Court was working under the more liberal standard governing a motion to dismiss", *Defendants' Brief, Footnote 9*.  In the order denying the motion to dismiss, in fact, the Court cited at least seven cases, the statute and the Restatement, Second, of Conflict of Laws, <u>See</u> Exhibit 2.  The Defendant is apparently confusing the motion to dismiss with MRA and Mantra Films' motion for summary judgment which is not under " a more liberal standard".  Contrary to Defendant's citations MRA LLC  and Mantra Films Inc.'s motion for summary judgment and the plaintiff's motion for summary judgment were both denied without citing authority, the motion to dismiss was denied, citing plenty of authority.

### F.  Bullard's  Alleged Consent-The Defendants Completely Misstate The Evidence

Defendants think that it is "evident from her [Bullard's] testimony and the videotape itself that Bullard was aware that the videotape could be widely distributed."  Defendant cites Bullard Deposition, Page 16 through 21.  There is nothing in pages 16 through 21 that would indicate that Bullard ever considered that the tape could be "widely distributed," or distributed at all, for that matter.

"Two men just asked us to show our boobs, or whatever".  *Bullard Deposition, Page 18, Lines 10 and 11*.  "It was very quick.  It was just really very quick."  *Bullard Deposition, Page 18, Lines 18 and 19.*

After the men asked her to expose her breasts and she did, and after they were photographed, the men offered her beads.  There is no evidence it was an exchange for anything and the Defendants' citations do not support that the beads were in exchange for anything let alone consideration.

Bullard testified that all of the beads she was wearing were either found or that other people had given her and that she had never exposed her breasts before or after the incident which is the subject matter of this action.  *Bullard Deposition, Page 71, Lines 15 through 22.*

Defendants conclude, without any accurate citations to the record or authority that the beads given **after** Bullard was photographed was somehow

consideration in exchange for the taping of her image.  There is no evidence in the record that this is the case.

Defendants again cite the Lane case and contend that the Lane case holds that the Plaintiff consented to the Defendants' use of her image because she exposed her breasts before a video camera  on a public street to a cameraman she did not know.

"The Middle District of Florida found that 'no reasonable jury could conclude that Lane's consent limited the viewing …".   The Court emphasized the fact that Lane's companion put her on notice that the cameraman might use the images for commercial purposes [the companion's photograph ended up in *Maxim* magazine].   Thus, the court held that there was no disputed fact that Lane had consented to the broad use of her images. Bozley v. WildWett.com 4:04cv393 (N.D. Ohio 2004) at Page 26, *Exhibit 8*.

This is vastly different from the case at bar.  In the instant case, there is no evidence that the 14 year old Bullard  had any knowledge or gave any thought  to the possibility that her image would be sold for use in any product or otherwise distributed in any manner whatsoever.      For the reasons set forth above the Defendant's Motion for Summary Judgment should be denied.

This 7th day of August, 2005.

/S/

_____

Jeff Banks
Attorney for Plaintiff
GA Bar No.   005445

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**LINDSEY BULLARD,**
    **Plaintiff,**

**-vs-**                       **CIVIL ACTION #**
                                 **1:04-CV-2407 (JEC)**

**MEDIA PLAY, INC.,**
**MRA HOLDING, LLC,**
**and MANTRA FILMS, INC.,**
    **Defendants.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the foregoing PLAINTIFF'S RESPONSE TO MRA HOLDINGS, LLC'S AND MANTRA FILMS, INC.'S MOTION FOR SUMMARY JUDGMENT upon counsel for the Defendants by placing a copy of the same in the United States Mail with adequate postage affixed and addressed to wit:

Nicole Day, Esq.
J. Scott Carr, Esq.
WARGO & FRENCH, LLP
1170 Peachtree Street
Suite 2020
Atlanta, Georgia   30309

This 7th day of August, 2005.

/S/

_____

Jeff Banks
Attorney for Plaintiff
GA Bar No.   005445

BANKS & RIEDEL
1301 Shiloh Road, Ste. 1610
Kennesaw, Georgia   30144
(678) 797-6364

## L.R. 7.1 Certification

I certify that the foregoing Brief in Support of Motion for Summary Judgment complies with the Local Rule 5.1 for the Northern District by being prepared in a Times New Roman font of not less than a size 14.

This 7th day of August, 2005.

/S/

_____

Jeff Banks
Attorney for Plaintiff
GA Bar No.   005445