IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LINDSEY BULLARD,

      Plaintiff,

v.

MRA Holding, LLC, and MANTRA
FILMS, INC.,

      Defendants.

CIVIL ACTION NO.

1:04-cv-02407-JEC

## <u>ORDER AND OPINION</u>

This case is before the Court on defendant MRA Holding, LLC and defendant Mantra Films, Inc.'s (the "defendants") Motion for Summary Judgment [179].  For the reasons that follow, defendants' Motion for Summary Judgment [179] is **GRANTED in part** as to all but the appropriation claim.  The resolution of defendants' motion relating to the appropriation claim depends on unsettled questions of Georgia law.  Accordingly, the Court **DENIES** without prejudice defendants' motion for summary judgment on that claim and **CERTIFIES** the question to the Supreme Court of Georgia.

## BACKGROUND

This case arose from the defendants' use of plaintiff Lindsey Bullard's videotaped image in one of the infamous *Girls Gone Wild* videos,[1] as well as in marketing for that video. Created by entrepreneur Joe Francis, the *Girls Gone Wild* series features young, and sometimes underage, women in states of partial or total nudity, and sometimes performing more explicit sex acts.

In April of 2000, plaintiff, who was then 14 years old,[2] traveled to Panama City, Florida for spring break. (Bullard Dep. [38] at 5.)[3]

---

[1] Presumably, the *Girls Gone Wild* series left video technology behind at some point, and began being produced as DVDs. For ease of reference, all the volumes in this series will be referred to as videos.

[2] Plaintiff was born on January 28, 1986. (Bullard Dep. [38] at 4).

[3] Although both sides of this litigation have provided statements of undisputed fact, no party has responded to these filings in the manner required by LR 56.1B, NDGa. This is the fourth round of briefing for summary judgment, as the length of this litigation has been increased by both a lengthy civil stay pending the outcome of a criminal prosecution of defendants' founder, Joe Francis, as well as by a contentious discovery process that has been protracted as a result of Mr. Francis' defiance of the applicable discovery rules and Court orders regarding the same.

In earlier briefing, the parties complied with the relevant Local Rule by specifically admitting, denying, or objecting to the other parties' statements of material fact. In this, the last and most important round, they did not do so. This oversight has required the Court to wade through the entire record to try to ascertain which facts are in dispute: an exercise that defeats the purpose for the applicable Local Rule and that wastes the Court's scarcest resource, time.

2

Plaintiff was chaperoned on this trip by her next-door-neighbors, Crystal and Paul Osman, whose two daughters, along with two additional girls, were on the trip.  (*Id.* at 7.)

One evening during that vacation, plaintiff was walking with two of the girls down Thomas Drive, which is known, unfacetiously, as "The Strip."  (*Id.* at 7, 15-16.)  Two men approached the girls with a video camera and asked them to step off of the strip into a parking lot and show them their "boobs."  (*Id.* at 16-19.)  Neither of the men identified themselves, nor were they wearing any clothing identifying them as affiliated with *Girls Gone Wild*.  (*Id.* at 17.)  Plaintiff showed them her breasts and one of the men recorded the act with his video camera.  (*Id.* at 19.)  The only thing plaintiff received from the two men was a beaded necklace.  (Bullard Dep. [38] at 20.)

Defendants purchased plaintiff's recorded indiscretion from another entity and incorporated her clip into a videotape produced and sold by defendants, entitled *Girls Gone Wild, College Girls Exposed, Volumes 1 and 2*.  (Francis Dep. [47] at 12-14; Guttman Dep. [51] at 40.)  A photograph of plaintiff exposing her breasts also appears prominently on the cover of this videotape box.  (Video Cover, attached to Pl.'s Resp. to Defs.' Mot. for Summ. J. [180] at Ex. 1.)  Unlike the recording itself, however, plaintiff's otherwise exposed breasts are blocked out with the imperative, "Get Educated!"  (*Id.*)  This image also appeared in television commercials and on

internet advertisements that promote defendants' products, including television commercials during the *Howard Stern Show*. (Screen Capture from TV advertisement, *id.* at Ex. 11; Guttman Dep. [51] at 56-7.)

Defendants have advertised and shipped this tape throughout the continental United States. (Guttman Dep. [51] at 82, 102-3.) Plaintiff did not consent to the use of her image in a *Girls Gone Wild* video nor to the distribution of that video. (Bullard Aff. [180] at ¶¶ 4-5.)

As a result of the widespread advertising and distribution of the *Girls Gone Wild* video containing her image, plaintiff suffered great humilation. She was harassed by faculty and students at school.[4] (Bullard Dep. [38] at 31-3, 40-44.) Administrators singled her out for discipline, and one of her teachers indirectly sought an "autograph." (*Id.* at 34-35.) In addition to negative remarks, she became known as "Porn Star" by her peers. (*Id.* at 42.)

In 2004, plaintiff filed a three-count complaint against defendants.[5] The first count consists only of a series of factual

---

[4]  Plaintiff was still enrolled in middle school in April of 2000, when she was videotaped. (Bullard Dep. [38] at 5.) The harassment arising from her appearance in the *Girls Gone Wild* video occurred the next school year, when she was then a freshman in high school. (*Id.* at 24-25, 29, 37.)

[5]  Plaintiff voluntarily dismissed all of her claims against defendant Media Play, Inc. in November of 2005. (Stipulation of Dismissal [65].)

4

allegations that do not specify a cause of action.  The second count asserts a claim for "Exploitation of Children." The third count makes a claim for the appropriation of plaintiff's likeness for commercial purposes.  Defendants move for summary judgment on all claims.

**DISCUSSION**

I.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Where the nonmovant bears the burden of proof, the moving party need only show the absence of evidence to support the nonmovant's case, or affirmative evidence demonstrating that the nonmovant will be unable to prove their case at trial.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-1116 (1993).  An issue is material if, "under the applicable substantive law, it might affect the outcome of the case." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 (11th Cir. 2010).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *See*

5

*Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002).   Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue for trial.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

## II.   <u>CHOICE OF LAW</u>

Federal courts sitting in diversity cases apply the forum state's choice-of-law rules.  *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998).  Georgia is the forum state here.   In tort cases, Georgia follows the traditional doctrine of *lex loci delicti*.  *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816 (2005).  Under this rule, a tort action is governed by the substantive law of the state where the tort was committed.  *Id.* at 809.  The place of the wrong is the "place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place."  *Risdon Enter., Inc. v. Colemill Enter., Inc.*, 172 Ga. App. 902, 903 (1984).

Georgia courts have not been called on to decide how to apply choice-of-law principles in a case involving the appropriation of one's likeness through distribution of materials in multiple states. Determining what choice-of-law principles a Georgia court would apply

in such a situation is therefore a very uncertain undertaking.   *See* *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1446 n.6 (11th Cir. 1998)(discussing difficulties in application of *lex loci delicti* in commercial misappropriation case, but ultimately deciding that the law of the forum, Alabama, should apply).

Defendants argue that the law of Florida should apply because that is where the video was shot.[6]   Perhaps, a Georgia court might so decide, but applying the definition cited above in *Risdon*--the "place where the injury sustained was suffered rather than the place where the act was committed"--plaintiff's injury was suffered most greatly in Georgia.   *Risdon Enter., Inc.*, 172 Ga. App. at 903.   While defendants distributed plaintiff's image throughout the United States, plaintiff lived and attended school in Georgia, and it was the viewing of the advertisements in Georgia by fellow students and members of the community that led to the ridicule and humiliation that plaintiff suffered as a result of her appearance in the *Girls Gone Wild* videotape and her prominence on the video cover.

To the extent that the "advertising value" of plaintiff's image constitutes the proper measure of damages, this "injury" was presumably suffered at the place of plaintiff's domicile, which is

---

[6]   Defendants also argue that because Georgia law is so "underdeveloped" as to this tort, it would be preferable to rely on Florida law, which is "substantially more developed."   (Defs.' Br. [179-1] at 10 n.3.)

also in Georgia.   At any rate, whether the injury is measured according to the emotional damage or financial damage that ensued, plaintiff was not injured by the act of being videotaped in Florida, which act was not even performed by defendants.   She was injured because  defendants advertised and disseminated, nationwide, her image as the cover model for the video.   Defendants have therefore not shown that Florida would have a greater connection with that injury than would Georgia.

Accordingly, because defendants distributed merchandise containing plaintiff's image throughout the United States, not just in Florida, and because plaintiff resided in Georgia at the time the appropriation occurred, the Court will assume that Georgia law controls.[7]   *See Allison, supra.  Cf. Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135 (1982)(applying Georgia law, where plaintiff was domiciled and where Dr. King had lived, when defendant marketed plastic busts bearing Dr. King's likeness in 80,000 copies of newspapers across the country).

## III. COUNTS I AND II

Count I of plaintiff's complaint is a series of factual allegations that do not expressly designate the violation of a

---

[7]   As the Court is certifying other questions to the Georgia Supreme Court, however, it will likewise certify this choice-of-law question as well.

statute or duty.  Count II, titled "Exploitation of Children," simply alleges that "defendants knowingly distributed obscene materials,...a child in a state of partial nudity, a product specifically designed for sexual arousal and sexual stimulation."  (Compl. [1] at ¶ 31.) Defendants correctly note that Count I states no cause of action.  As to Count II, defendants further argue that a cause of action for criminal behavior that exploits children is unavailable as a private right of action under Georgia law and, even if it were, plaintiff has not produced evidence that defendants knew she was a minor or that her behavior amounted to sexually explicit conduct.  The Court agrees with defendants.

In her effort to reap civil liability from criminal statutes, plaintiff cites to two statutes: O.C.G.A. § 16-6-5,[8] which makes

_____

[8]  O.C.G.A. § 16-6-5 provides:

(a) A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts.

(b) Except as provided in subsection (c) of this Code section, a person convicted of the offense of enticing a child for indecent purposes shall be punished by imprisonment for not less than ten nor more than 30 years. Any person convicted under this Code section of the offense of enticing a child for indecent purposes shall, in addition, be subject to the sentencing and punishment provisions of Code Section 17-10-6.2.

(c) If the victim is at least 14 but less than 16 years of age and the person convicted of enticing a child for indecent purposes is 18 years of age or younger and is no more than four years older than

criminal the enticement of a child for indecent purposes, and 18 U.S.C. § 2257[9], which requires record keeping for certain producers of images depicting sexual activity. (Resp. Br. [182] at 28-29.) As to the purported Georgia law predicate, "[t]he violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is injured thereby." *Troncalli v. Jones*, 237 Ga. App. 10, 12 (1999). Nonetheless, "[c]ivil liability may be

---

the victim, such person shall be guilty of a misdemeanor and shall not be subject to the sentencing and punishment provisions of Code Section 17-10-6.2.

[9] Plaintiff alleges that defendants pled guilty, in a criminal proceeding that does not appear to involve plaintiff, to a violation of 18 U.S.C. § 2257(f)(4), which makes it unlawful for "any person knowingly to sell or otherwise transfer, or offer for sale or transfer, any book, magazine, periodical, film, video, or other matter, produce in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce or which is intended for shipment in interstate or foreign commerce, which:

  (A) contains one or more visual depictions made after the effective date of this subsection of actual sexually explicit conduct; and

  (B) is produced in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce, or is shipped or transported or is intended for shipment or transportation in interstate or foreign commerce;

which does not have affixed thereto, in a manner prescribed as set forth in subsection (e)(1), a statement describing where the records required by this section may be located, but such person shall have no duty to determine [sic] the accuracy of the contents of the statement or the records required to be kept."

10

authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute." *Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 455 (2010).   An indication that the legislature intended to "'impos[e] a civil as well as a criminal penalty' must be found *in the provisions of the statute* at issue, not extrapolated from the public policy the statute generally appears to advance."   *Id.* (emphasis in original).

Plaintiff does not identify, and the Court does not find, any indication from the language of O.C.G.A. § 16-6-5 that the state legislature intended to create a private right of action in addition to criminal penalties. *Cf. Chisolm v. Tippens*, 289 Ga. App. 757, 761 (2008)(declining to find implied private right of action for cruelty to children under O.C.G.A. § 16-5-70).

Likewise, absent a clear indication from Congress, courts should not infer a civil cause of action from a federal criminal statute. *See Love v. Delta Air Lines*, 310 F.3d 1347, 1352-53 (11th Cir. 2002) ("statutory language customarily found in criminal statutes. . . provides far less reason to infer a private remedy in favor of individual persons").   Chapter 110 of Title 18 makes criminal the sexual exploitation and other abuse of children.   18 U.S.C. § 2255[10]

---

[10]   (a) In general.   Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A,

11

creates a civil remedy for a number of violations of the statutes located in this chapter.  Section 2257, which is part of this same chapter and which addresses only non-compliant record keeping, is not included in the list of statutes that create a private right of action.  Congress demonstrated that it knew how to create a private right of action for crimes that sexually exploit children.  That it chose not to include § 2257 in its list of statutes triggering a private remedy means that Congress did not create a private right of action for a violation of 18 U.S.C. § 2257.  *See Delgado v. United States Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007)("[w]here Congress knows how to say something but chooses not to, its silence is controlling.")  As such, plaintiff has no claim against defendants arising from the violation of either penal statute.[11]

---

2252, 2252A, 2260, 2421, 2422, or 2423 of this title [18 U.S.C. §§ 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee.  Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

(b) Statute of limitations.  Any action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or[,] in the case of a person under a legal disability, not later than three years after the disability.

[11]   Further, as defendants correctly note, plaintiff has not explained how the defendants' conduct in this case satisfies the

Because plaintiff has alleged no viable cause of action for the violation of a penal statute, her claims on this count must rest on the applicable tort law of Georgia. *See Smith v. Chemtura Corp.*, 297 Ga. App. 287, 295 (2009)(where criminal statute does not provide private right of action, civil liability "must be determined under the applicable provisions of the tort laws of [the state]"). In her response, plaintiff now contends that her claim against defendants, set forth in Counts I and II of her complaint, actually lies in negligence. According to plaintiff, defendants have acknowledged the violation of a federal law, 18 U.S.C. § 2257(f)(4), which imposes record-keeping requirements on entities like defendants. (Pl.'s Resp. Br. [182] at 28.) If defendants had complied with this law, plaintiff says, her image would not have appeared in the video or advertisements, and she would not have been injured. Further, plaintiff argues that defendants have committed negligence *per se* because they violated O.C.G.A. § 16-6-5, which prohibits enticement of children for indecent purposes.

Under this revised theory of recovery, plaintiff's injury is necessarily physiological, emotional, and mental, as opposed to an injury to her proprietary interests. (Compl. [1] at ¶ 42.) Thus, she is actually claiming that defendants negligently inflicted

---

elements of either criminal statute. Indeed, plaintiff has not even tried.

13

emotional distress.   Unfortunately for plaintiff, a claim for negligent infliction of emotional distress is subject to Georgia's impact rule, which requires, among other things, a physical injury to plaintiff before emotional distress damages are permitted.  *See Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (2000)("In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury.").  Because defendants never caused plaintiff any physical injury, a negligent infliction of emotional distress claim necessarily fails.[12]  Defendants' motion for summary judgment on Counts I and II is therefore **GRANTED**.

## IV.  <u>COUNT III:  APPROPRIATION OF LIKENESS FOR COMMERCIAL PURPOSES</u>

Plaintiff is a private citizen who, when 14 years old and while walking down a main thoroughfare during spring break in Panama City, Florida, bared her breasts to two men whom she had just met and who had asked to see her "boobs."  With plaintiff's knowledge, one of the men made a video recording of this exposure.  In doing so, plaintiff joined in what has apparently become a spring break tradition among some young women.   They bare their breasts or otherwise expose themselves to a male onlooker, who is often armed with a video

---

[12]   Plaintiff also has not pressed, nor properly alleged, a claim for the intentional infliction of emotional distress.

14

camera, and who, in return, hands the girls some inexpensive, plastic beads.

Defendants later used the videoed and photographic image of plaintiff in its videos: *Girls Gone Wild, College Girls Exposed, Volumes 1 and 2*.  Plaintiff's baring of her breasts was shown in an approximately 5-second clip on the video.  Her still-image was also put on the cover of the video box, with her breasts blocked out by the inscription, "Get Educated!"  Given her cover status on the video box, plaintiff's image was broadcast numerous times on television advertisements, as well as on the internet.  From these widespread advertisements, plaintiff was recognized by students and teachers at her school, as well as other members of her community.  She suffered great humiliation and distress at this extensive airing of her indiscretion.

That plaintiff behaved foolishly and recklessly by baring herself to a stranger with a camera is an obvious fact.  Yet, fourteen-year old middle schoolers sometimes do stupid things, with little thought for future consequences.  Defendants exploited that momentary foolishness for their own commercial gain, with no concern for the humiliation that could befall plaintiff when her image was placed on the cover of their video.  Moreover, while defendants presumably made a great deal of money off the venture, plaintiff received no compensation.  If nothing else, defendants have acted

churlishly in their stingy refusal to share some of the vast revenue they gained from selling a video for which the plaintiff was the cover girl.

One might reasonably expect that there would be a civil remedy for a 14-year old against a defendant who, without the consent of the young woman or her parents, has plastered the girl's semi-nude image on a video cover and then paraded that image on nationwide television advertisements.  Yet, the type of conduct engaged in by Joe Francis and his companies is of rather recent vintage, and it is not at all clear that the law has caught up with this kind of vulgar exploitation of a young girl.  The question therefore is whether Georgia law has, in fact, expressed condemnation of defendants' conduct by the creation of a cause of action for a plaintiff who has been so ill used.

The parties have indicated that there is no Georgia statutory law governing this type of claim.  Plaintiff instead makes a claim under Georgia common law for invasion of privacy, arguing that defendant's use of the above-described photo on the cover of the video box, which image was distributed through numerous advertisements, constituted "misappropriation of likeness for commercial use" and "breached [her] privacy."[13]  (Compl. [1] at 14

_____

[13]  Plaintiff does not make a claim based on defendants' use of her video-recorded image on the video recording, itself.  She

AO 72A
(Rev.8/82)

(Count III:   Appropriation  Of  Plaintiff's  Likeness  For  Commercial
Purposes)  and  at  16,  ¶  39.)   Unfortunately,  the  very  scant  Georgia
law  on  this  subject  provides  no  clear  answer  as  to  whether  the
plaintiff  has  a  viable  claim.

### A.   <u>Georgia Law</u>

With  no  statute  governing  the  particular  claim  being  made  by
plaintiff  and  with  only  scant  Georgia  caselaw  on  this  general  type  of
claim,  it  is  difficult  to  discern  what  the  elements  of  such  a  cause
of  action  might  be.   Because  it  is  not  clear  what  the  parameters  of
an  appropriation  claim  might  be  under  Georgia  law,  the  question
whether  the  facts  of  this  case  give  rise  to  such  a  claim  is  a  very
uncertain  one.

It  is  clear  from  Georgia  law  that  an  appropriation  claim
emanates  from  a  tort  protecting  the  right  to  privacy.   In  fact,
Georgia  was  purportedly  the  first  state  to  recognize  a  "right  to
privacy"  tort[14]  when  it  did  so  in  1905  in  *Pavesich v. New England Life
Ins. Co.*,  122  Ga.  190  (1905).   In  that  case,  the  Georgia  Supreme
Court  created  a  cause  of  action  based  on  the  invasion  of  the
plaintiff's  right  of  privacy  when  plaintiff's  photo,  along  with  an

_____

challenges  only  defendants'  use  of  her  image  as  the  "cover  girl"  for
the  product  in  advertisements.

[14]   *See Martin Luther King, Jr., Ctr. for Soc. Change*,  250  Ga.
at  138  (noting  that  Georgia  Supreme  Court  became  first  such  court
to  recognize  right  of  privacy).

endorsement by plaintiff of defendant's product--life insurance--was used in a newspaper advertisement without his permission.  In fact, the plaintiff had never given permission for use of his photograph, had never made the statement of endorsement appearing below his photograph, and had never even purchased life insurance from the defendant.

While the *Pavesich* decision offered relief to the plaintiff based on the particular facts of his case, it did not set out the elements of this new tort and therefore is of no help in determining whether plaintiff has stated a claim in this case.  Since the *Pavesich* decision over a century ago, the Court has found only two Georgia cases that even remotely bear on the issues found in the present case.  These two cases, unfortunately, are very dissimilar factually to the present case.

In *Cabaniss v. Hipsley*, 114 Ga. App. 367 (1966), the plaintiff was an "exotic dancer," who had allowed her photograph to be used for the purpose of advertising herself and her act at various nightclubs throughout the United States.  *Id.* at 368.  In the words of the opinion, this photograph showed plaintiff to be a "luscious, lithesome, bosomy brunette clad only in two tantalizing, titillating tassels and a scanty G-string." *Id.* at 369.

Unbeknownst to plaintiff, and without her consent, the Atlanta Playboy Club had obtained a copy of this photograph and had used it

18

in magazine advertisements for its club.  Billing plaintiff under a name that she had never used, the ad gave the impression that patrons of the Playboy Club would be able to enjoy a display of plaintiff's talents.  In fact, plaintiff had never appeared at the Playboy Club. *Id.*

In reaching its decision in favor of the plaintiff, the Georgia Court of Appeals' decision set out the four types of common law torts that are subsumed under a broader tort covering the invasion of privacy.[15]  Because only one of these four torts--appropriation of the plaintiff's name or likeness for the defendant's advantage--is a candidate for the claim that plaintiff in the present case seeks to make,[16] the undersigned will focus only on the Georgia court's discussion of that claim.

Setting out the basic elements of an appropriation claim, the *Cabaniss* court noted that an appropriation claim did not require a

---

[15]  Those four "loosely related torts...[are]: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Cabaniss*, *supra*, at 370.  It is only the fourth tort that is relevant to this case.

[16]  Arguably, the tort covering public disclosure of embarrassing private facts might be a possibility, but it is unlikely that this tort would extend to defendants' conduct, and plaintiff has not relied on this cause of action in her complaint.

19

showing of intrusion, invasion of the plaintiff's privacy, or a false representation concerning the plaintiff.    Instead, this claim "consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness." *Cabaniss, supra*, at 377.    Moreover, borrowing from terminology used in a United States Second Circuit Court of Appeals decision,[17] the Court noted that this particular cause of action might also be called a "right of publicity" claim.    *Id.* at 378.

The Georgia Court of Appeals concluded that the plaintiff had alleged facts from which a jury could conclude that her photograph had been appropriated for commercial exploitation without her consent.  *Id.* at 379.  Yet, if found that the plaintiff had alleged the wrong kind of damages.  Specifically, the plaintiff had alleged general damages based on injuries to her "feelings, sensibilities [and] reputation."   *Id.* at 378.    While recovery based on such injuries can be made in a case alleging one of the other three privacy torts, recovery for an appropriation or publicity claim must allege and prove "the value of the use of the appropriated publicity."  *Id.*  Accordingly, the Court remanded for a new trial at which the plaintiff would have to prove "[the] advertising value [of

---

[17]    *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953).

AO 72A
(Rev.8/82)

the unauthorized use of the photograph] for the time and manner in which it was appropriated": that is, actual damages. *Id.* 386-387.

The second case that offers discussion that is somewhat relevant to the issues present in this case is *McQueen v. Wilson*, 117 Ga. App. 488 (1968). In that case, the actress Butterfly McQueen, who had some years before played the role of "Prissie" in the movie *Gone With The Wind*, had agreed to appear in a "home movie" sponsored by the Stone Mountain Plantation Corporation and defendant Wilson. Ms. McQueen was to adopt a Prissie-like persona in this movie, in return for which the defendants would pay her the reasonable value of her services as an actress. Plaintiff McQueen was to have the right to sell postcards from the pictures and defendants would sell nothing until a formal contract was finalized. As it turned out, defendants never paid plaintiff for anything and they used the movie and stills to sell postcards, movie slides, home movies, and a souvenir booklet.

As to plaintiff's claim based on an invasion of the plaintiff's privacy in the "traditional sense," the court concluded that there was no claim. *Id.* at 490. Plaintiff was not seeking privacy; quite the opposite, she was seeking to expand on the publicity she had enjoyed in her most famous role. The Court did, however, find that plaintiff had stated a claim for appropriation of her image, which the court concluded to be a property right for which the measure of

21

damages was "the advertising value of the use of the material in the manner and for the time it was appropriated." *Id.* at 492.

Clearly, the above two cases differ greatly from the facts of the present case. They are similar in that the plaintiffs in those cases and the plaintiff in this case consented to being photographed. In *Cabaniss*, the plaintiff had not consented to the use by the defendant Playboy Club of the photograph that the club had obtained without plaintiff's consent, albeit plaintiff was content to have the photo publicized by others with her permission. In *McQueen*, the plaintiff had likewise consented to being filmed, but her consent included a promise by the defendants that they would pay her for her work and not sell the movie or any stills without compensating the plaintiff. Indeed, *McQueen* seems to be as akin to a breach of contract or *quantum meruit* claim as it is to an appropriation claim.

In both *Cabannis* and *McQueen*, the plaintiffs were not shy and were more than happy for the public to see their images, as long as the distributor obtained their permission and as long as plaintiffs were paid for the value of that viewing. Here, it is obvious that plaintiff never wanted the world at large to see her unclothed and certainly did not want the public exposure that her cover-girl status on the video package brought. The plaintiff "agreed" to be briefly videotaped, as she raised her top while a man holding a video camera taped her. The interaction between plaintiff and these two men was

22

apparently of very short duration, and there was no request by plaintiff that she be compensated for her momentary lapse of common sense. So, defendants clearly breached no explicit agreement between plaintiff and the two men who taped her.

On the other hand, while plaintiff may have agreed to be videotaped, she did not agree for the defendants to plaster her image on the cover of a video box containing film of other half-naked girls and then advertise that image, nationwide, on television. Stated another way, if a 14-year old girl agrees to be filmed in a semi-nude state, has she also agreed to have her image used on the cover of a video box to advertise a video product that she did not even know was going to be created? If her conduct did constitute agreement to this broader use, does the fact that she was underage when she was filmed destroy an inference of consent?

Unfortunately, the two cited cases do not hint at whether the plaintiff has an appropriation claim based on these facts, nor have the parties cited, or the Court discovered, any other Georgia authority that would help to answer this question.

**B.    Other State Court Holdings In Cases Involving Similar Facts**

Given the dearth of Georgia authority on the tort alleged by plaintiff, the parties have cited to authority from other states. Some of those other states, however, have enacted statutes that set out the parameters of the tort. Georgia has not done so, and

23

therefore reliance on these states' statutes does not help in deciding what Georgia law might say about the facts of this case. Indeed, the scant Georgia caselaw touching on this type of claim makes it very difficult, if not impossible, to predict what a Georgia appellate court would hold the elements and parameters of such a Georgia claim to be. To add to the confusion, other state court decisions on these *Girls Gone Wild* types of scenarios are not consistent. The following discussion summarizes some of these cases.

1.   Florida

At least two federal courts sitting in Florida have had to determine, on facts similar to those present here, whether Florida law creates a cause of action. In *Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540 (N.D. Fla. Mar. 15, 2002)(Hinkle, J.), the plaintiff, a college student who was in a crowd at a Louisiana Mardi Gras celebration, had been videotaped while exposing her breasts. Defendant M.R.A., who is also the defendant in this case, included plaintiff's video clip, along with many others, in one of its volumes of *Girls Gone Wild*. The defendant further used plaintiff's photograph, with her breasts exposed, "on the videotape package and in widely disseminated advertisements, as well as on defendant's web site, all without plaintiff's permission." *Id*. at *1.

24

Plaintiff raised two statutory and one common law cause of action. She claimed a violation of FLA. STAT. § 540.08,[18] which prohibits publication of a photograph of another, without consent, for any commercial or advertising purpose. As plaintiff's photograph was put on the package of the videotape and used in advertisements, the district court concluded that the plaintiff had stated a claim, in that defendant had made commercial and advertising use of plaintiff's likeness, without her permission. Likewise, the court found that plaintiff had stated a claim for violation of Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201 *et seq.* (2001), as plaintiff asserted that defendant had used her photograph in a manner falsely suggesting that plaintiff had endorsed defendant's product. *Id.* at *3.

Plaintiff also raised two common law invasion of privacy claims, alleging that defendant had misappropriated her likeness by commercial exploitation of her photograph without her consent and that defendant had portrayed plaintiff in a false light, by falsely suggesting that plaintiff had willingly participated in and endorsed defendant's videotape. The district court found that the alleged

---

[18]   The district court rejected the defendant's argument that Louisiana law should apply because that is where the video was filmed. The district court determined that the Florida statute, by its own terms, should apply as the videotape was advertised and sold in Florida and therefore covered by the statute. *Id.* at *1.

25

facts stated a claim under each of the above causes of action.  *Id.* at *2.

In short, the takeaway from *Gritzke* is that a plaintiff whose photo has been placed on the cover of a video box and used in advertisements of a *Girls Gone Wild* videotape has stated a cause of action under a common law invasion of privacy claim that appears similar to Georgia's, as well as under the Florida statutory counterpart of that common law tort.

While *Gritzke* favors the position of plaintiff Bullard in this case, another Florida federal court decision goes the other way.  In *Lane v. MRA Holdings, LLC,* 242 F. Supp. 2d 1205 (M.D. Fla. 2002)(Conway, J.), the plaintiff was driving her car in Panama City Beach, when she was approached by persons with a video camera who asked that she and her companion expose themselves to the camera in exchange for beaded necklaces.  Plaintiff did so, and her video clip found its way into a *Girls Gone Wild* video.  Although there is no indication that plaintiff Lane's photograph was placed on the video box containing her video clip, defendant did air television commercials containing two and three-second censored clips of Lane exposing her breasts.  *Id.* at 1209-1210.

Addressing defendant's summary judgment motion, the district court focused on the elements for the statutory claim.  Concluding that the elements of a Florida common law claim for commercial

26

misappropriation of likeness are the same as the elements for a statutory claim of unauthorized publication of likeness in violation of FLA. STAT. § 540.08, the court's resolution of that statutory claim became its resolution for the common law claim, as well. *Id.* at 1220-21.

As to the court's analysis, it held that the Florida commercial misappropriation statute (§ 540.08) prohibited use of a person's likeness to directly promote a commercial product, unless the person has consented to that use. *Id.* at 1212-13. It concluded, however, that plaintiff Lane's image had not been used to directly promote the *Girls Gone Wild* video. That is, while Lane's image was used to sell copies of the videotape in which she appeared, her likeness was "never associated with a product...unrelated to that work." *Id.* at 1213. The Court noted that Lane was "never shown endorsing or promoting a product, but rather, as part of an expressive work in which she voluntarily participated."[19] *Id.*

The *Lane* court acknowledged the *Gritzke* holding and noted its belief that the latter case was the only case in which FLA.

_____

[19]   The Florida Supreme Court has endorsed the *Lane* court's articulation of the standard to be applied to § 540.08 as requiring a plaintiff to show that her likeness has been used "to directly promote a product or service because of the way that the use associates the person's name or personality with something else." *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 808 (Fla. 2005).

STAT. § 540.08 has been applied to an expressive work, which the court concluded a *Girls Gone Wild* video to be.  The Court distinguished the facts in *Gritzke*, noting that in the latter case the plaintiff's image was placed on the outside cover of the videotape package and was doctored.  *Id.* at 1215.  Lane's image, in contrast, was a truthful, accurate depiction of her voluntarily exposing her breast, with no doctoring of the clip or any advertising use that suggested she was endorsing or promoting the videotape.

Lane also addressed the plaintiff's argument that, as a minor (17 years old), she was incapable of giving consent to the use of her image in the video, itself.  After an exhaustive search of Florida statutes and caselaw, the court concluded that plaintiff's minor status did not vitiate her consent to being photographed as she exposed her breasts.  *Id.* at 1215-1219.  Plaintiff Lane also argued that even if she was capable of giving consent to being videotaped, she had not consented to the tape being distributed or to her clip being used in advertisements.  The district court concluded, however, that based on the undisputed facts, no reasonable jury could conclude that Lane's consent was limited to having only those persons present view the videotape.[20]

---

[20]   Plaintiff Lane was dealing with some difficult facts. Specifically, after the individuals with a video camera had requested that plaintiff and her companion expose their breast for beads, plaintiff's companion commented that she had done this before

In short, while the holding in *Lane* went against the plaintiff there, the court did note a factual distinction that was present in *Gritzke* and is present here: which is that the images of the plaintiffs in *Gritzke* and here were used on the cover of the video package to directly advertise the video. Further, both images were doctored. In the present case, plaintiff's breast were blocked out with the inscription, "Get Educated!," which could be construed as an endorsement of the product.

### 2.   Other States

Courts in other jurisdictions have addressed the type of scenario present in this case, but no consistent theme or reasoning emerges. In *Capdeboscq v. Francis*, No. Civ.A.03-0556, 2004 WL 463316 (E.D. La. Mar. 10, 2004), the plaintiff had attended a Mardi Gras party hosted by the *Girls Gone Wild* creator, Joe Francis, and while standing next to rap star, Snoop Dog, the plaintiff lifted her "Snoop Dog" t-shirt to expose her breasts. A photograph of this gesture ended up on the cover of the video, "*Girls Gone Wild Doggy Style.*"

---

at Mardi Gras, with the result that her photograph had appeared in *Maxim*, a popular men's magazine that features the photographs of nude and semi-nude women. Shortly after this disclosure, plaintiff Lane pulled down her tube top to reveal her breasts. *Id.* at 1209. Given these facts, it was difficult for Lane to argue that she would not have understood that her image might be distributed widely to an adult male audience.

Plaintiff sued, raising a common law claim under Louisiana law for invasion of her right to privacy. She argued that Joe Francis had repeatedly requested that she so pose for a photograph and had assured her that the photograph would not be included in any *Girls Gone Wild* videotape. The district court denied summary judgment, noting that there were disputed issues of fact as to whether the party was a public party or a private party. *Id.* at *2. Presumably, if at a public party, the plaintiff would have no expectation of privacy.

In *Topheavy Studios, Inc. v. Doe*, No. 03-05-00022-CV, 2005 WL 1940159 (Tex. App. Aug. 11, 2005, *reh'g overruled*, Sept. 14, 2005), the plaintiff, a seventeen year-old on spring break in South Padre Island, agreed to take part in the filming of a trivia game on a stage in the public street of the island. The female participants attempted to answer trivia questions and agreed to raise their tops each time they gave a wrong answer. The plaintiff gave three wrong answers, exposing her breasts each time. Later, the defendants used this footage in a video game directed toward males, "The Guy Game," which flipped the rules of the trivia contest to allow the game player to see an image of a topless woman every time he gave a correct answer.

The plaintiff sued under a state common law claim of invasion of privacy and misappropriation of her likeness, arguing that she was

30

never told that the video footage of her would be used for an internet video game.  The Texas Court of Appeals, reviewing the issuance of injunctive relief for plaintiff, found that plaintiff had stated a claim, but also found consent on plaintiff's part.  Nevertheless, as a minor, plaintiff's consent could be voided under some circumstances.  The appellate court set out the standards under Texas law for determining when a minor may void an agreement, and remanded the case to the trial court for proceedings consistent with that ruling.

In *Barnhart v. Paisano Publ'n, LLC*, 457 F. Supp. 2d 590 (D. Md. 2006), the plaintiff attended an outdoor pig roast for motorcycle enthusiasts.  During this event, and presumably with the encouragement of the male attendees, some of the women began removing their shirts in return for beads.  Plaintiff joined in, at which point her photograph was taken and later published in a magazine catering to motorcycle enthusiasts.

Plaintiff then sued for invasion of her privacy and appropriation of her likeness under Maryland common law.  As to the latter claim, the district court noted that plaintiff had no viable claim, as she was photographed in a public place at a newsworthy event.  Further, her likeness had no commercial value, by itself, as the plaintiff was neither famous nor a professional model.  *Id.* at 595-96.

In *Bosley v. Wildwett.com,* 310 F. Supp. 2d 914 (N.D. Ohio 2004), the plaintiff was a television news reporter in Youngstown, Ohio who, while on vacation with her husband in Florida, participated in a wet t-shirt contest in a local nightclub.  Defendants released a video of the contest, promoting the video as including the appearance of the defendant, who was nicknamed the "naked anchor woman." *Id.* at 917-18. Plaintiff sued under multiple claims, including an Ohio common law and statutory cause of action for misappropriation of likeness for the defendant's advantage, as well as a violation of the plaintiff's right to publicity. *Id.* at 919.  Before the district court on a request to enjoin further distribution of the video, the court concluded that plaintiff had shown a likelihood of success.  Moreover, the Court rejected the defendants' argument that plaintiff had consented to distribution of the video under either Ohio or Florida law. *Id.* at 931-32.  The Sixth Circuit stayed the issuance of the injunction as a prior restraint on speech, but did not address the district court's discussion of the merits of plaintiff's claim.  *Bosley v. WildWetT.com,* No. 04-3428, 2004 WL 1093037 (6th Cir. Apr. 21, 2004).

**V.**   **NEED TO CERTIFY CONTROLLING QUESTIONS IN THIS CASE TO THE GEORGIA SUPREME COURT**

   **A.**   **Georgia Law Is Silent On The Issues Found In This Case**

For the reasons explained above, it is uncertain whether the plaintiff can state a claim for commercial appropriation of her

32

likeness.  Certainly, there could be a path to recovery for her.  Even if the tort were limited to use of the plaintiff's likeness for purposes of advertising a product, one could argue that defendants did use her likeness for that purpose, as defendants put plaintiff's doctored photo on the cover of the video package and added words purportedly spoken by her, which arguably suggested that she had voluntarily participated in the production of the video and was encouraging the public to purchase the video.  Further, ads containing the above were aired on television and the internet.

Nevertheless, even under the above argument, two potential obstacles to recovery for plaintiff remain.  First, if Georgia law is like Florida law, as articulated in the *Lane* and *Tyne* decisions, the above use of plaintiff's image could be deemed to be incidental to the expressive work (the video) being promoted and in which the plaintiff appeared, and therefore not covered by the common law tort.

Second, how does one value the "advertising" worth of plaintiff's likeness?  In a claim for appropriation, the apparent measure of damages is the "advertising value of the use of the material in the manner and for the time it was appropriated." *Whisper Wear, Inc. v. Morgan*, 277 Ga. App. 607, 610 (2006).  Defendant relies on the Restatement (Second) of Torts to argue that a claim for the appropriation of likeness requires the plaintiff to have had some preexisting commercial value in her likeness prior to its use by

33

defendants.  *See* RESTATEMENT (SECOND) OF TORTS § 652C, Comment d.[21]
Indeed, in *Pierson v. News Grp. Publ'ns, Inc.*, 549 F. Supp. 635, 642
(S.D. Ga. 1982), the district court granted summary judgment on an
appropriation claim holding that the defendant could not have
exploited commercially plaintiff's name and photograph, as they had
no preexisting value.

If this is the standard, then plaintiff will gain no recovery,
as there was no value to her likeness prior to this incident.  On the
other hand, it is possible that Georgia law might not define the
advertisement value of plaintiff's likeness so narrowly.  Defendants
obviously wanted to choose the most evocative and winning image to put
on the front of their packaging and, thereafter, to advertise on
television and the internet.  Defendants clearly had lots of images
to choose from, and they are certainly the experts as to what sells.
That they chose plaintiff's image as the image to put on their video
box, over hundreds of others, suggests that they considered the image
to be quite valuable.  Therefore, insisting that the plaintiff
demonstrate some prior success as a model or celebrity arguably
constricts unduly the value that defendants, and the public, saw in
her image.

_____

[21]  Defendants appear to incorrectly cite to § 652E, Comment d
in their brief.  ([179] at 2, 22.)

34

Further, even if plaintiff's likeness did not have value when defendants first used it, these videos were advertised over a period of time, and plaintiff's likeness perhaps gained value as it became associated with the popular *Girls Gone Wild* brand.   A Georgia appellate court could conclude that, at some point in this marketing, plaintiff's image did attain value.

Even if plaintiff can hurdle the above obstacles, she still must overcome defendants' claim that her consent to being videotaped defeats any claim for appropriation of her image.   There is Georgia caselaw indicating that consent vitiates a claim for invasion of privacy.  *Alonso v. Parfet*, 253 Ga. 749 (1985); *Tanner-Brice Co. v. Sims*, 174 Ga. 13 (1931); *Buchanan v. Foxfire Fund, Inc.*, 151 Ga. App. 90 (1979).  However, the statements to that effect in the above cases are made in a conclusory fashion, and without analysis.  The Court is aware of no case addressing whether consent to take one's photo in one context, implies consent to use that image for all purposes the photographer wishes.

As the facts do not appear in dispute on this point, the consent question is a pure question of law.[22]   The question is fairly

---

[22]   Indeed, while consent can often be a question for the jury, reliance on that broad principle here will offer the jury no guidance as to what the law is or the standard it should apply to reach a verdict.  Telling the jury in this case that it must decide, on these undisputed facts, whether plaintiff consented is tantamount to telling the jury that it must determine what Georgia law is on

straightforward: does the agreement to be videotaped by a stranger constitute an agreement to let that stranger use one's image to market a videotape that the stranger will later try to sell, particularly when the subject has not even been told that a video product containing her image was going to be created?  *Cf. Multimedia WMAZ, Inc. v. Kubach*, 212 Ga. App. 707, 709-10 (1994)(in claim for public disclosure of private facts, plaintiff's limited disclosure to family members did not prohibit liability for disclosure in news report).

If consent to be photographed constitutes consent to having one's image later used in an expressive work, was plaintiff's consent here invalidated by the fact that she was only 14 years old when she allowed herself to be videoed while exposing her breasts?  The answer to this question will depend on a construction of Georgia law.

**B.   Certification Is Appropriate**

Georgia statutory law authorizes certification of state law questions that are "determinative of [a] case" pending in federal district court when there are "no clear controlling precedents" in the decisions of the Georgia Supreme Court.  O.C.G.A. § 15-2-9.  The Eleventh Circuit has indicated that "[s]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court."

---

the question set out in text.

*Cascade Crossing II, LLC v. Radioshack Corp.*, 480 F.3d 1228, 1231 (11th Cir. 2007)(certifying a question concerning the application of O.C.G.A. § 13-1-11.)

To decide defendants' motion for summary judgment on plaintiff's claim for appropriation of likeness, the Court must decide the questions set out below, which questions the Court certifies to the Georgia Supreme Court.  In considering these question, the Supreme Court should assume the following facts:

1.   The plaintiff exposed herself to two unknown men in a parking lot off of a a heavily-traveled road; was aware that the men were videotaping her; and expressed no objection to being videotaped.

2.   Plaintiff and the two men had no discussion about what future use the men might make of the videotaped image.

3.   Plaintiff was 14 years old when the incident occurred.

4.   Defendants obtained a recording of the above incident and included the clip in its *Girls Gone Wild* video series.

5.   Defendants also used a still-photo of plaintiff extrapolated from the video clip and placed it in a prominent position on the cover of the video box for the *Girls Gone Wild* video that it later marketed and sold nation-wide.  On that photographic image, defendants blocked out the plaintiff's breasts and superimposed an

37

inscription, "Get Educated!" in that block. The inscription arguably gave the appearance that plaintiff was making this statement.

6. Defendants did not obtain plaintiff's permission for any of the acts described in paragraphs 4-5.

7. Television and internet advertisements were aired showing the above.

8. Plaintiff's image had no commercial value before appearing on the cover of the *Girls Gone Wild* video.

9. Plaintiff suffered humiliation and injury to her feelings, sensibilities, and reputation as a result of the above.

The Court certifies the following questions to the Georgia Supreme Court:

1. Does Georgia law govern plaintiff's appropriation of likeness claim when:

   a. The plaintiff, whose domicile is in Georgia, has been videotaped in Florida;

   b. when her clip has been included in a video including images of other such girls, and her image has been placed prominently on the cover of the marketing materials, with a statement arguably attributed to plaintiff that she did not make;

38

      c.   when that video, along with plaintiff's image and statement on the cover of the video, has been advertised nationally, including in Georgia, and when the video has been marketed and sold nation-wide, including in Georgia; and

      d.   when the emotional injury to plaintiff, such as humiliation, ridicule, and other negative consequences, has occurred in Georgia?[23]

      e.   If Georgia law does not control, which state's law does govern the dispute in this case?

2.   Assuming that Georgia law does control, do the facts stated above give rise to a cause of action under Georgia law for appropriation of plaintiff's image?

      a.   If so, and for purposes of instructing a jury, what are the elements of such a claim?

3.   Third, if a reasonable jury could find for plaintiff on the above facts on an appropriation claim, what type of damages may plaintiff recover?

---

[23] The Court recognizes that, with the arguable exception of the *Pavesich* case, general damages based on injuries to plaintiff's feelings, sensibilities, and reputation have been held not to be a proper measure of damages for an appropriation claim. The Court nonetheless includes this fact for any bearing it may have on the Georgia Supreme Court's determination of the choice-of law question or any other question.

39

    a.   If the answer to this question is "the advertising value of the use of the material in the manner and for the time it was appropriated,"[24] is plaintiff required to show some preexisting "advertising value" for her image prior to being videotaped or, instead, does the "advertising value" test look to the value of the image, itself, when the model is not known to the public and when that image is used on video packaging materials and on television advertisements of a product?

4.   On the above facts, does a plaintiff's consent to being videotaped constitute consent to the videographer, or his assignees, to incorporate the clip into a video tape that is commercially distributed and to place a photo from that clip on the cover of the video packaging?

5.   If, under Georgia law, the answer to Question #4 is "yes," can a plaintiff's consent be rendered invalid if the plaintiff was a minor?

    a.   If a plaintiff's minor status can undo an otherwise valid consent, does this minor status automatically undo consent in all circumstances?

---

[24]  *See* Discussion, *supra* at 20-21, 33-34.

40

b.   If not, what are the factors that the jury should consider in determining whether the consent of a minor is valid?

The above questions solely involve issues of Georgia law that should be decided by the Georgia Supreme Court.  In certifying this question, the Court does not intend to restrict the issues considered by the state court or to limit the state court's discretion in choosing how to frame or answer those issues in light of the facts of the case.  *See Cascade Crossing,* 480 F.3d at 1232.  To assist the Supreme Court's consideration of this question, the entire record in this case and the briefs of the parties are transmitted herewith.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants' Motion for Summary Judgment [179] is **GRANTED in part** and **DENIED in part.** The Court **CERTIFIES** the above questions to the Supreme Court of Georgia.  The Clerk shall **administratively terminate** this case.  Upon a decision by the Georgia Supreme Court, the parties shall notify the Court and may request that the case be administratively reopened.


SO ORDERED, this <u>27th</u> day of AUGUST, 2012.


                    <u>/s/ Julie E. Carnes</u>
                    JULIE E. CARNES
                    CHIEF UNITED STATES DISTRICT JUDGE

41